## STATE v. ERVIN WEBBER.

123 N. W. (2d) 193.

August 9, 1963—No. 38,668.

*Johnson & Johnson* and *Moonan & Senn,* for appellant.

---

[11]State v. Fouquette, 67 Nev. 505, 537, 221 P. (2d) 404, 421; Annotation, 107 A. L. R. 1499; see, also, 56 Nw. U. L. Rev. 268.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent.

THOMAS GALLAGHER, JUSTICE.

On October 27, 1961, defendant was convicted of the crime of robbery in the first degree in the District Court of Waseca County. On November 2, 1961, he was arraigned on an information charging four prior felony convictions to which he entered a plea of guilty. On November 2, 1961, he was sentenced to the State Prison at Stillwater for a term not to exceed his natural life. This is an appeal from the judgment of conviction and sentence entered therein.

On appeal defendant's principal contention is that the evidence which was submitted at his trial was insufficient to establish his guilt beyond a reasonable doubt. A number of additional assignments of error are made relating to the admission or exclusion of evidence and to the court's refusal to give certain cautionary instructions with reference to an improper inference claimed to have been made by the state. Because of our decision on the basis of defendant's principal contention as above set forth, it will be unnecessary for us to consider these additional assignments of error.

The information charged that on July 1, 1961, defendant:

"* * * Ervin Webber together with Donald Oskey did wilfully, wrongfully, unlawfully take money from the person of another by means of force or violence, said acts constituting the crime of Robbery in the 1st degree in violation of Section 619.41 and 619.42 M. S. A."

In a similar information Donald Oskey was charged with the same offense. The cases were consolidated for trial and the jury returned verdicts of "guilty" against each of the defendants. Donald Oskey has since died.

The record discloses the following evidence: Martin Schuldt, the alleged victim, testified that he was 58 years of age and resided on a farm in Steele County; that on June 29, 1961, he had come to Waseca to visit his nephew; that at about 2:30 p. m. on June 30, 1961, he had visited McLoone's Bar in Waseca and had remained

there drinking intoxicants until about 4 p. m., at which time he had left to talk with a friend until 5:30 p. m.; that he had then returned to the bar to purchase two bottles of sloe gin which he left there while he proceeded to McCleery's liquor bar where he had continued to drink until about 11 p. m.; that while there he had met defendants Ervin Webber and Donald Oskey but that he had left McCleery's alone, intending to return to McLoone's to pick up his sloe gin; that he had then become "mixed up" in attempting to find McLoone's and about midnight had again met Webber and Oskey who had taken him in their car to have a "good time"; that they then had picked up some beer and some gasoline, which he had paid for, and had driven to a farmsite a few miles north of Waseca where they had parked in the driveway and that a fourth man whom he could not identify had joined them there.

He further testified that Oskey and the fourth man had left with him to walk toward some buildings on the property while Webber remained in the car; that he had followed Oskey and the other man for some distance when, after hearing someone call to them, he commenced to walk in a different direction and that while so doing "something struck me and down I went"; that after this he had returned to the car where he had found Webber and Oskey with the car in a ditch; that Webber and Oskey attempted to get it out of the ditch but were unable to do so; that he, Webber, and Oskey had then proceeded to a nearby farmhouse where a cut on his head had been washed by one of the occupants; that a Mr. Jellum and a Mr. Fisher who lived there had then taken him to the hospital in Waseca where a doctor had sutured the cut; that a tow truck had then been engaged to haul the car out of the ditch; and that he had paid for such towage and for the medical and hospital services furnished him.

He testified that after this he had gone to the sheriff's office where he made a complaint to the effect that he had been robbed. A statement was then taken from him in which the following appears:

"I was into McCleery Bar & meet Ervin Webber & one of the Oskey. I bought both men a couple of drinks. This was 4:30 June-

30-61. I stayed in McCleery until about 7 o'clock or 7:30. I went over to McLoone & the boys had left McCleery.

"The next time I saw the boys was as I came out of McLoone Bar. I came out the front door of McLoone & Ervin Webber saw me & called to me to come with him. * * *

"We drove around town for some time & the others drank beer. There were three other guys in the car. * * *

"We drove up to a place which is Vi Johnson farm in Blooming Grove.

"Webber park the car on the road & said I had to walk to the place. Two went ahead.

"As I got near the building a person called over here over here so I started to go the other way & someone hit me over the head with something. I came back to the car & there were two back at the car. They said to me are you back all ready.

"I got back into car & Webber back off road so then we had to go get help. We went up to Fell but he couldn't get us out so we went up to Charles Fisher place & Norman Jellum wife took the guy over to Moser station & they came out & got the car.

"The other two went down to help get the car & I stayed at Fisher house. Norman Jellum took me to the hospital.

"When I was hit on the head some one took $30 or $40 from me."

Schuldt testified that when he left Steele County on June 29, 1961, he had over $100 in his possession. A notation on Schuldt's statement indicates that on July 1, 1961, when he was making his complaint, he then had cash in his possession in the sum of $43.45, and that he had then reported to the sheriff that he had expended $6 for medical treatment; $5 to the towage company; and $9.25 to Fisher and Jellum for their help. He testified that he had expended additional sums at various bars in which he had been drinking. It is undisputed that he was intoxicated at the time he made his report to the sheriff. There is no evidence that any money belonging to Schuldt was found on the persons of either Webber or Oskey when they were taken into custody.

Defendant took the stand in his own behalf. He admitted having

been with Schuldt during the evening in question. He testified that at about 12 p. m. that night he had seen Schuldt leaning against a parking meter and had invited him into the car, as he had seen a police car parked nearby and was fearful that Schuldt might be arrested for intoxication; that they had then driven to the North Station and bought some beer, which Schuldt had paid for, and then had proceeded to the Victor Johnston farm where they had stopped in the driveway to drink the beer; that all of them had commenced walking around the car in attempts to "sober up"; that he had no knowledge that either Oskey or Schuldt had then walked toward the farm buildings in the rear; that they had remained there for some time and that all of them had then gotten into the car and attempted to back it out of the driveway, but that in doing so he had backed it into a ditch; that he, Oskey, and Schuldt had then attempted to push the car out of the ditch and that he had then noticed that Schuldt had an injury or cut on his head; that because they had been unable to push the car back on the driveway they had all walked to a nearby farmhouse for help; that a Mrs. Jellum, who had been at the farmhouse, took them to a towage or service station where a tow truck was hired to get the car out of the ditch; that this was paid for by Schuldt; that after this Schuldt had been taken to a hospital in Waseca for treatment of his cut; and that during all of this time Schuldt had not made any complaint about being injured or having been robbed. The testimony of defendant Oskey was of similar import.

■ We are of the opinion that the evidence submitted as summarized above falls far short of establishing beyond a reasonable doubt defendant's guilt of robbery in the first degree. There is nothing therein which directly or indirectly links him with an assault upon Schuldt on the Victor Johnston farm or with even an attempt to rob, or an actual robbery of, Schuldt. There is nothing in the conduct or statements of either defendant or Donald Oskey before or after their arrest which would permit a reasonable inference that defendant had been involved in the crime described. After his arrest there was nothing to indicate that he had any money on his person which

belonged to Schuldt. No statement made by him or by Oskey at that time linked him with an assault upon Schuldt or any knowledge thereof. His testimony was corroborated in many details by the testimony of Schuldt and of Oskey.

Further, all evidence seems to establish conclusively that Schuldt was thoroughly intoxicated throughout the evening during which he claims he was robbed; that he had spent most of the afternoon and evening in two bars in Waseca and had repeatedly used his money, which he kept in a wallet, to pay for drinks and liquor for himself and others. It is his testimony that when he had left his home to visit Waseca he had over $100 in cash on his person. When he made his complaint to the sheriff, he still had $43.45 in his possession. He gave the names of a number of people to whom he had made cash payments for different items furnished during the afternoon and evening. It seems unlikely that, had he been robbed by defendant as he charges, he would still have had $43.45 on his person. His testimony suggests that, if he were struck as he claims, the fourth man whom he described as appearing at the farmsite and who had left the car with him and Oskey could well have been his assailant. All such factors would appear to leave not merely a reasonable doubt but rather a substantial doubt as to defendant's guilt.

■ One of the fundamental rules in the trial of criminal cases is that while circumstances may constitute evidence of guilt they must have some logical relevancy and probative force as to the facts sought to be proved thereby. Where such evidence merely raises suspicion, or gives room for conjecture, it is not sufficient to sustain a conviction. State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458; State v. Kaster, 211 Minn. 119, 300 N. W. 897; State v. Johnson, 173 Minn. 543, 217 N. W. 683; State v. Larson, 207 Minn. 515, 292 N. W. 107. Here the evidence upon which defendant was convicted is more indicative of his innocence than of his guilt, and has led to his sentence of imprisonment for a term not to exceed his natural life. All of this because of the disappearance of some $30 from the wallet or pockets of the intoxicated alleged victim. In view of the doubt and uncertainty left by a consideration of this evidence, as

well as the fact that if a new trial were granted the result would be dependent upon the same evidence, we are left with no alternative but to reverse the judgment and direct defendant's release from custody.

Reversed.