## STATE v. JOSEPH MLYNCZAK.

130 N. W. (2d) 53.

July 3, 1964—No. 38,799.

*Stanley McMahon,* for appellant.

*Walter F. Mondale,* Attorney General, and *Linus J. Hammond,* Assistant Attorney General, for respondent.

THOMAS GALLAGHER, JUSTICE.

In our former opinion herein (State v. Mlynczak, 266 Minn. 230, 123 N. W. [2d] 358), this case was remanded to the District Court of Winona County for the purpose of having a transcript of the testimony prepared and filed here so that we might determine whether it was sufficient to support the jury's verdict of guilty. Upon consideration of such testimony, the following supplemental opinion is made a part of our prior decision.

The transcript discloses that at the trial the complaining witness, a boy of 13 years, completely repudiated the accusations he had previously made against defendant which formed the basis of the information under which the latter was being tried. Claiming surprise, the county attorney, with the court's consent, thereupon cross-examined the witness about previous oral statements, not made under oath, and about an unsworn written statement he had given to police officers and to the county attorney wherein such accusations had been made. In the course of such cross-examination, the witness denied the truth of all his previous oral and written statements and consistently testified that they had been made at the insistence and instigation of his mother, who had not witnessed any of the events involved. The following questions and answers are indicative of this procedure:

"Q. Did you give a statement to Captain Berg [of the Winona Police Department] about this?

"A. Yah.

\* \* \* \* \*

"Q. Is what you are telling here now the same thing you told in the office?

"A. No, but it is the truth.

\* \* \* \* \*

"Q. What did you want to say?

"A. I want to say that my mother put me up to this all. She did, honest.

\* \* \* \* \*

"Q. Didn't you and your mother come into the office?

"A. Yes.

"Q. And didn't I ask you then—we had a little talk about this whole thing?

"A. Yes.

"Q. And I asked you about what had happened with Mlynczak, didn't I?

"A. Yes, but my mother put me up to the whole thing.

\* \* \* \* \*

"Q. And we went over the whole experience that you had with Mlynczak, didn't we?

"A. Yes, but that isn't true.

\* \* \* \* \*

"Q. Your dad has been talking to you about this, hasn't he?

\* \* \* \* \*

"A. He hasn't. I told him the whole story once before and he just told me to tell the truth, and I am telling the truth now.

"Q. He told you the whole story once before?

"A. I told him the whole story and he just told me to tell the truth, and that is what I am doing now.

"Q. You are doing this to protect who?

"A. Nobody."

Subsequently, the written statement which the witness had repudiated was received over defendant's objection and submitted to the jury as substantive evidence of defendant's guilt.

■ The record fails to disclose any competent evidence which would corroborate the unsworn statements of the complaining witness. In State v. Saporen, 205 Minn. 358, 285 N. W. 898, we held that evidence of the type described was incompetent as substantive evidence in criminal proceedings and admissible only for impeachment purposes on the issue of credibility. There the court stated (205 Minn. 361, 285 N. W. 900):

"The rule is well settled that the only office of impeaching testimony of this kind is to negative or neutralize the testimony to which it is directed. (It may also discredit the witness as such.) \* \* \* That is what Dean Wigmore calls the orthodox and 'universally maintained' rule of American decision law. Although approved in the first (§ 1018), it is disapproved in the second, edition of Wigmore, Evidence (§ 1018). The disapproval of the learned author is put upon the ground that the impeached witness testifies finally under oath and subject to cross-examination. Hence, he concludes, 'the whole purpose of the hearsay rule has been already satisfied,' and so 'there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve.'

"That, we submit with deference, is not enough to qualify the previous contradictory assertion as substantive evidence. The oath of the witness solemnizes his former extrajudicial statement not at all. It goes only to his testimony which is occasion for and target of the impeachment. The previous statement was when made and remains an ex parte affair, given without oath and test of cross-examination. Important also is the fact that, however much it may have mangled truth, there was assurance of freedom from prosecution for perjury.

\* \* \* \* \*

"There are additional practical reasons for not attaching anything of substantive evidential value to extrajudicial assertions which come in only as impeachment. Their unrestricted use as evidence would increase both temptation and opportunity for the manufacture of evidence. Declarations extracted by the most extreme of 'third degree' methods could readily be made into affirmative evidence. In criminal cases the defendant would have a similar opportunity to entrap the state's witnesses, and use as evidence all their extrajudicial assertions. The same enlargement of the field of inquiry would result in civil cases."

See, also, Erickson v. Paulson, 251 Minn. 183, 87 N. W. (2d) 585; State v. Gulbrandsen, 238 Minn. 508, 57 N. W. (2d) 419.

■ The state contends that the facts in the instant case bring it within an exception to the foregoing rule and cites a number of decisions in support thereof. We have examined the decisions cited and find that in some of them the prior inconsistent written or oral statements received as substantive evidence were statements made by witnesses under oath as in affidavits or in testimony before grand juries; or were statements which the witnesses reaffirmed as true.[1] In others, the courts held merely that under the facts there presented the prior inconsistent statements might be received only for the limited purpose of

---

[1]Stewart v. B. & O. R. Co. (2 Cir.) 137 F. (2d) 527; United States v. Freundlich (2 Cir.) 95 F. (2d) 376; Robinson v. United States, 113 App. D. C. 372, 308 F. (2d) 327; Harman v. United States (4 Cir.) 199 F. (2d) 34; Zimberg v. United States (1 Cir.) 142 F. (2d) 132.

impeachment.[2] Such facts and circumstances clearly distinguish the cases cited from the instant case where the prior statements involved were not made under oath and where the complaining witness definitely and firmly characterized all of them as untrue.

■ Accordingly, we feel that in the absence of any competent evidence to support the jury's verdict we are left no choice but to remand the case and in the interests of justice to direct the release of defendant from custody. See, State v. Kaster, 211 Minn. 119, 300 N. W. 897; State v. Johnson, 173 Minn. 543, 217 N. W. 683; State v. Larson, 207 Minn. 515, 292 N. W. 107; State v. Webber, 266 Minn. 224, 123 N. W. (2d) 193.

Reversed.

---

[2]London Guarantee & Acc. Co. v. Woelfle (8 Cir.) 83 F. (2d) 325; see, Robinson v. United States, 113 App. D. C. 372, 308 F. (2d) 327.