## STATE v. LAWRENCE JOSEPH SLAPNICHER.

149 N. W. (2d) 390.

March 23, 1967—No. 39,633.

*Fena & Nasi* and *Arvid Nasi, Jr.*, for appellant.

*John C. Arko,* County Attorney, and *David Naughtin,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

This is an appeal from a paternity adjudication. The only issue is whether the court erred in refusing to receive testimony given by a witness at a previous trial, which the defendant claims was exculpatory notwithstanding the fact it was subsequently repudiated.

The attending physician testified that the date of conception was within 2 or 3 days of April 29, 1963. One Kenneth Ostroot was called as a witness with the understanding he could be cross-examined by both parties and neither of them would be bound by his testimony. In the course of his examination by the state, Ostroot testified as follows:

"Q. [Mr. Naughtin, assistant county attorney] Do you know whether or not you went out with [the mother] in the months of April, May, June or July—March, April, May or June of 1963?

"A. It is possible. I don't know when it was.

"Q. Have you ever had any relations with her in March, April, May, June or July, 1963? Have you ever had sexual intercourse with her?

"A. Well, seeing this is a court and you want the truth, yes, I have.

"Q. When was that?

"A. On these—well, when I did go out with her, whenever it was.

"Q. When was that?

"A. I don't know if it was in these months or not. I can't recall when it was I went out with her. It has been a while.

"Q. Well, you have no idea?

"A. No. You have the dates. I don't know. I don't know the date.

"Q. Did you have sexual intercourse with her in 1963?

"A. If it was last year, then evidently it was.

\* \* \* \* \*

"Q. How many times did you go out with her last year?

"A. Twice.

"Q. You don't know whether it was in the early part of the year or latter part of the year?

"A. I would say it was the early part of the year myself. I don't know. I remember she was dating [defendant] quite heavily and she wouldn't go out with me, so it must have been the early part of the year."

On cross-examination by defendant's counsel, Ostroot stated:

"Q. You say you think it was winter. Could it have been April or May? April is still winter.

"A. It might have been. I am not sure. It has been long. I can't quite recall.

\* \* \* \* \*

"Q. [Re-cross-examination] And you could be the father just as well as he, couldn't you?

"A. Well, it all depends on how this time element figures in."

On the afternoon of the day that Ostroot gave this testimony, he was asked by the court in chambers whether he wished to clarify any discrepancy in his testimony, to which he made the following answer:

"A. Well, I got on the witness stand and I didn't know what the case was about. Nobody explained it to me. I came to court late so I didn't know who was the defendant or who was the plaintiff; so when he asked—He put—Well, he asked me if I had relations in 1963. It had been so long ago I didn't know. That is why I didn't know if it was winter or summer. But when I went home for dinner after the court session, I checked. I had to check back with the girls I had gone with after that all the way back until I took her out; and it figured back until sometime in the winter of 1962; so it was either December of 1962 or the very beginning of the year—back that far. That is how

long it has been—a year and a half ago—and my memory really isn't that good.

\* \* \* \* \*

"Q. Are you remembering that you are under oath and now just calling them right down the line as you remember it?

"A. I wanted a chance to state this this afternoon because it would put me in the hangman's noose otherwise.

\* \* \* \* \*

"Q. You haven't dated her since January, '63?

"A. That is my statement.

"Q. That is over a year ago now then?

"A. That is the truth."

The discussion terminated with the following colloquy:

"The Court: Whether it hurts or not. Have you changed your story here now because you think that if you had left it the way it was you might get hooked yourself?

"Witness: It is not mine. If it was my child we'd be married right now.'"

Thereupon the trial court granted a mistrial.[1]

At the second trial, the defendant called Ostroot, who again stated that the last time he dated the mother was in January 1963. He then testified as follows:

"Q. [Mr. Nasi, defendant's attorney] Did you have sexual intercourse with [the mother] during the latter part of April or the first part of May?

"A. Of 1963?

"Q. Right.

"A. No, sir.

"Q. Did you at any time state under oath that you had sexual intercourse with her in April or May of 1963?"

---

[1] We believe the better procedure would have been to complete the trial and let the jury decide which version of Ostroot's testimony was the more accurate.

An objection to the last question was sustained as an attempt to impeach defendant's own witness without any claim of surprise. Thereupon defendant renewed a previous request to treat Ostroot as a hostile witness and to cross-examine him on his prior testimony, which defendant argued was inconsistent. Defendant asserts that having been given under oath and subject to cross-examination the testimony was admissible. The motion was denied. The jury found defendant guilty as charged, and defendant appeals from an order denying a new trial.

We are here asked to apply a rule, advocated by a number of distinguished scholars and commentators and adopted by the Second Circuit United States Court of Appeals, that in the absence of surprise, and without being limited to impeachment, a litigant has a right to introduce as substantive evidence inconsistent testimony given by a witness at a prior trial.[2] The principal objections to such a rule do not obtain, it is argued, if the witness was present at the first trial, was under oath, subject to cross-examination, and is now available to be sworn and cross-examined by the adverse party at the second trial.

Although the rule for which defendant contends may well merit our further consideration in an appropriate case notwithstanding our prior adherence to an orthodox position,[3] we are persuaded that this is not the proper vehicle for adopting the more liberal approach which is proposed. A careful examination of Ostroot's testimony discloses that

---

[2] United States v. De Sisto (2 Cir.) 329 F. (2d) 929, 933; Di Carlo v. United States (2 Cir.) 6 F. (2d) 364, 368, certiorari denied, 268 U. S. 706, 45 S. Ct. 640, 69 L. ed. 1168; 3 Wigmore, Evidence (3 ed.) § 1018; McCormick, Evidence, § 39; McCormick, *The Turncoat Witness: Previous Statements as Substantive Evidence,* 25 Tex. L. Rev. 573; Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv. L. Rev. 177, 192; Ladd, *Some Observations on Credibility: Impeachment of Witnesses,* 52 Cornell L. Q. 239, 249; A. L. I., Model Code of Evidence, Rule 503(b); 9A U. L. A., Rules of Evidence, Rule 63(1); Annotation, 133 A. L. R. 1454, 1462.

[3] Kvanli v. Village of Watson, 272 Minn. 481, 486, 139 N. W. (2d) 275, 279; State v. Mlynczak, 268 Minn. 417, 419, 130 N. W. (2d) 53, 54; State v. Dahlgren, 259 Minn. 307, 309, 107 N. W. (2d) 299, 301; State v. Saporen, 205 Minn. 358, 361, 285 N. W. 898, 900. See, also, United States v. Rainwater (8 Cir.) 283 F. (2d) 386.

he did not at any time affirmatively admit he had relations with the mother within a period of 3 months prior to conception. On the contrary, he qualified all of his initial testimony by consistently stating that he did not know when he had been out with her. At most, he said it might have been in April or May; that he wasn't sure; that it had been a long time; and that he couldn't quite recall. This, in our opinion, is too insubstantial a premise from which to conclude that Ostroot, and not defendant, was the father. Had Ostroot made an unqualified admission and later repudiated it, we would be obliged to decide whether it was admissible as substantive evidence. However, a fair reading of the testimony first given by Ostroot makes it clear that he had no recollection of the crucial dates. Where evidence is this vague and inconclusive, we hold that its exclusion was not prejudicial and does not require the granting of a new trial.

Affirmed.