## STATE v. VERLE ERNEST WHITECLOUD.

187 N. W. (2d) 694.

May 28, 1971—No. 41925.

*C. Paul Jones,* State Public Defender, and *Roberta Levy* and *Doris O. Huspeni,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Kelly, JJ.

NELSON, JUSTICE.

Direct appeal from a conviction of aggravated robbery (Minn. St. 609.245) following trial to the court.

Defendant-appellant, Verle Ernest Whitecloud, questions the sufficiency of the evidence to sustain the conviction. The pertinent facts are as follows:

Ben R. Clark was having coffee at the Band Box Cafe on East 14th Street in Minneapolis in the early morning hours of August 3, 1968, following a night of drinking. According to his testimony at the trial, he was joined there by defendant and one George Jacobs. Clark recalls having left the Band Box with defendant and Jacobs and being struck, but remembers nothing

further until he woke up in the hospital. At that time his money, approximately $15, was missing.

There were two disinterested eyewitnesses to what transpired after Clark left the Band Box. Their versions conflict with defendant's version, and this conflict gives rise to this appeal.

Adel Ramy and Sandra Morris were gazing out the window of Miss Morris' second-floor apartment, which overlooks East 14th Street, directly across the street from the Band Box. Each of them observed Clark, Jacobs, and defendant, and an unidentified fourth person walk out of the Band Box together. Mr. Ramy testified:

"* * * [T]hey walked out of the Band Box, they got against the American Legion wall [a building directly next door to the Band Box], they started talking to the guy, and the next thing I knew they pushed him a couple of times, got him down on the ground, they hit him a few times, they got him down on the ground, and that fellow right there, on the other side [referring to defendant], he took his boots and stomped on his head. * * *

* * * * *

"When he went down on the ground then after the guy stomped on his head, they went through his pockets, they unzipped his pants, then they took off and they came back to him again. I don't know what they picked up, and then they took off."

On cross-examination, Ramy testified that "there is all kinds of lights on the side of the Legion Club" that "shines right on the front."

Miss Morris confirmed this testimony, explaining:

"* * * [F]our men came out of the Band Box, * * * they got in front of the American Legion, the back door to the American Legion, and one guy hauled off and hit Mr. Clark, he fell up against the building and fell to the ground. Mr. White Cloud went over and stomped on his head and they started going through his pockets, and it looked to me like they were trying to get his pants off, I don't know."

Miss Morris called the police and then went to Clark's aid. She noted that his pockets were turned inside out and his pants were open.

George Jacobs, who entered a plea of guilty to a charge of aggravated robbery in connection with this incident, testified that defendant had not been with Clark, himself, and an unidentified third person in the Band Box, but had come along after the three had gone outside. Jacobs' version of what followed was:

"Well, somebody said something to one or the other between Clark and White Cloud, and White Cloud, I believe, hit him, and this other guy—well, all three of them were wrestling around, anyway, and that's all I know, and then I walked away."

Jacobs testified further that he had picked money off the ground and had given $5 or $6 to defendant. It was revealed on cross-examination that Jacobs had a record of three felony convictions dating back to 1945—grand larceny, 1945; unauthorized use of a motor vehicle, 1956; and assault, 1965.

Defendant testified that he had spent the evening drinking 7 to 10 blocks from the Band Box, to which he was walking when he encountered Clark, Jacobs, and "another guy." He explained:

"They were standing right beside that building, the Legion, I guess it is, and the man back here [Clark] asked me if I wanted to fight again, he was already bloody and cut, I guess he got in a fight at another tavern, so we got in a fight, and that was it."

Defendant denied taking anything from Clark or even having any knowledge that Clark had been robbed, although he admitted that Jacobs had given him money. Defendant was emphatic in his denial of Clark's testimony that defendant had been in the Band Box with him earlier that evening.

Defendant and Jacobs were arrested in the Band Box shortly after the incident. An information was subsequently filed against both defendant and Jacobs charging intentional aiding, advising, counseling, and conspiring to rob, using force. Minn. St. 609.05 and 609.245. The trial court found defendant guilty as charged

and sentenced him to an indeterminate term. This appeal followed.

Defendant contends that the evidence presented to the trial court was insufficient to establish the elements of aiding, advising, counseling, and conspiring to commit the crime of aggravated robbery and that it did not sustain the court's verdict finding defendant guilty of aggravated robbery because the elements of "taking from the person or in the presence of another" and "knowing he is not entitled thereto" were not proved beyond a reasonable doubt.

Defendant further contends specifically that there was no testimony at the trial that he took anything from Clark, and that any finding to the contrary can only be impermissible conjecture. Defendant cites in support of his contention State v. Webber, 266 Minn. 224, 123 N. W. (2d) 193, a case in which this court reversed a conviction for robbery following a jury trial. The court in the Webber case noted that the evidence, consisting primarily of the intoxicated victim's account of the incident, did not link defendant to the commission of the crime even indirectly; that defendant's conduct and statements did not permit a reasonable inference that he had been involved in the crime; and that defendant's testimony was corroborated in many details by that of two other persons. On the facts of the Webber case, the court appears to have been concerned with the possibility that there may not have been a robbery at all. We said (266 Minn. 229, 123 N. W. [2d] 196):

"One of the fundamental rules in the trial of criminal cases is that while circumstances may constitute evidence of guilt they must have some logical relevancy and probative force as to the facts sought to be proved thereby. Where such evidence merely raises suspicion, or gives room for conjecture, it is not sufficient to sustain a conviction."

However, that rule does not apply to this case, in which the evidence included the testimony of two disinterested eyewitnesses.

The state cites State v. Bellecourt, 277 Minn. 163, 152 N. W. (2d) 61, wherein this court upheld a conviction of theft even though the victim could not state that the defendant (one of the men who approached the victim) was the one who actually hit him or took his wallet. The court used the following language, which appears to be controlling in the instant case (277 Minn. 165, 152 N. W. [2d] 63):

"* * * We have simply a claim by defendant that even if a crime was committed he cannot be convicted because it is not proved beyond a reasonable doubt that *he*—of the three persons present together at that time and place—struck the blow or took the money. Once a reasonable inference arises, however, from all the circumstances that defendant was a participant with two others in the commission of the crime of theft at that time and place, defendant's guilt is sufficiently established. This inference is a fact question for jury determination, and the jury found, as it could, that he was such a participant."

Since the findings of the trial court are entitled to the same weight as the verdict of a jury in a criminal case, State v. Gravening, 289 Minn. 501, 182 N. W. (2d) 704, and the trial court could reasonably choose to believe the eyewitnesses' testimony which detailed conduct sufficient to establish beyond a reasonable doubt defendant's participation as a principal in the crime of aggravated robbery, the conviction must be affirmed.

Affirmed.