# GREGORY HILLESHEIM v. JOHN M. STIPPEL AND ANOTHER. INTEGRITY MUTUAL INSURANCE COMPANY, THIRD-PARTY DEFENDANT.

166 N. W. (2d) 325.

March 14, 1969—No. 41208.

*Gislason, Reim, Alsop & Dosland* and *James H. Malecki,* for appellant Hillesheim.

*Farrish, Zimmerman, Johnson & Manahan* and *Miles Zimmerman,* for appellant Stippel.

*Robb, Robb & Van Eps* and *Don James Chantry,* for respondent Integrity Mutual.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court denying a motion for amended findings or, in the alternative, for a new trial, and from a

judgment entered dismissing the complaint of third-party plaintiff, John M. Stippel.

The case arises out of an automobile collision between a pickup truck driven by Stippel and an automobile owned and driven by George Berle. Gregory Hillesheim and John Huelskamp, a 9-year-old grandson of Stippel, were passengers in Stippel's vehicle. Berle and John Huelskamp died as a result of the collision. Hillesheim was seriously injured. He commenced an action against Stippel and the administrator of Berle's estate, claiming Stippel and Berle were concurrently negligent.

Stippel was insured by Integrity Mutual Insurance Company, hereinafter called Integrity. Integrity represented Stippel in negotiating the settlement of other claims that arose out of the accident but refused to defend him in the action brought by Hillesheim, claiming that there was no coverage in that action for the reason that Hillesheim was an employee of Stippel and was therefore excluded under a provision of the policy which reads:

"This policy does not apply under Part 1:

* * * * *

"(e) to bodily injury to any employee of the insured arising out of and in the course of

"(1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or

"(2) other employment by the insured."

Stippel then brought this action as a third-party plaintiff against Integrity, seeking a declaratory judgment as to his policy's coverage with respect to the action brought by Hillesheim. The trial court severed the third-party action from the main action and tried it first without a jury. It found that Hillesheim was an employee of Stippel at the time of the accident within the meaning of the terms of the policy exclusion and that there was no coverage as to his action. Judgment was entered dismissing the third-party complaint after denial of the post-trial motion, and this appeal followed. The ultimate question is whether the evidence sustains

the court's finding that Hillesheim was an employee of Stippel within the meaning of the exclusionary clause in this policy.

The following facts appear to be undisputed: Stippel owned a farm on which he resided until December 1965, when he moved to St. George, Minnesota. At that time Hillesheim was a single man and he moved into the farm home vacated by Stippel. In June 1966 Hillesheim married Stippel's daughter and she moved in with him. They continued to occupy the farm buildings up to and after the date of the accident in which Hillesheim was injured.

Both before and after December 1965, when the farm buildings were vacated by him, Stippel operated the farm on a full-time basis, commuting daily after moving to St. George. Hillesheim was employed full time at a Super-Sweet Feed Company research farm at the time of the accident, and had been so employed for the preceding 17 months. He normally worked a 44-hour week, Monday through Friday and every other Saturday.

No cash rent was paid by Hillesheim for use of the farm home. Stippel did not pay Hillesheim regular wages, although the statement signed by Stippel indicates that he did make some small payments from time to time. He had paid Hillesheim $1 an hour for hauling corn in 1963, but that seems to have no connection with the matters here involved.

On the day of the accident, Stippel went to the farm to complete the repair of a combine harvester and to do the chores. During the morning he left the farm, accompanied by Hillesheim and John Huelskamp, in a pickup truck to procure some hay from a neighboring farm for use in feeding livestock on his own farm. On the way to the neighboring farm, the accident occurred.

Both Stippel and Hillesheim were severely injured. Stippel was unconscious for about 2 weeks and remained in the hospital for a considerable period of time.

Integrity retained one Richard O. Arne, an adjuster who lived at Willmar, Minnesota, to obtain statements from Hillesheim and Stippel, requesting that Arne investigate particularly the relationship between the two. The case was referred to him on October 10, 1966. Neither Hillesheim nor Stippel were advised by Integrity or by Arne prior to taking

the statements that there was any question about coverage of Hillesheim's claim. It is apparent that the trial court based its finding that Hillesheim was an employee of Stippel largely on the testimony of Arne and the contents of statements signed by Stippel and Hillesheim. The statements were prepared by Arne, who asked questions and then reduced the answers to narrative form. He testified that he read Stippel's statement to him. Stippel admits he signed his statement, but at the time of trial claimed the statements were not true. It is admitted that Stippel was not given a copy of his statement.

It is conceded that Integrity did not inform Stippel or Hillesheim that it would deny coverage until long after Arne had interviewed them. It is the claim of the third-party plaintiff in this action that even if the statements of Stippel and Hillesheim are admissible, Integrity is estopped from relying upon the policy defense that Hillesheim was Stippel's employee because of its failure to advise Stippel that it would deny coverage in the action brought by Hillesheim.

The appeal presents for our consideration these questions: (1) Does the evidence support the conclusion of the trial court that Hillesheim was an employee of Stippel within the meaning of the exclusionary clause in this policy? (2) Is there such ambiguity in the terms of the policy that the language included in the exclusionary clause should be construed against the insurer? (3) Was it error to permit Arne to use the statement he had prepared while interviewing Stippel to refresh his memory and then to testify from such statement, in the light of his admission that he had no independent recollection of what Stippel had told him? (4) Was the Hillesheim statement inadmissible under Minn. St. 602.01? (5) Was the conduct of Integrity in failing to disclose a disclaimer of coverage in the action brought by Hillesheim such as to constitute a waiver of the policy defense that Hillesheim was an employee of Stippel? (6) Is the third-party plaintiff entitled to attorneys' fees and expenses on account of Integrity's failure to furnish a defense to the action brought by Hillesheim?

■ In this third-party action against Integrity, Stippel contends the statement taken from him is inadmissible under § 602.01 because a copy of it was not given to him within 30 days after it was taken; and that

inasmuch as the statement was inadmissible, it was improper to admit its contents by permitting Arne to refresh his memory by reference to it.

As to the latter contention, we agree that if the statement is inadmissible it is improper to circumvent the purpose of the statute by admitting its contents in the manner in which it was done here. In Price v. Grieger, 244 Minn. 466, 469, 70 N. W. (2d) 421, 423, we said:

"Section 602.01 is divisible into two parts, one of which creates the presumption of fraud as to any statement taken from an injured person within 30 days after his injuries in the trial of any action therefor; and the other of which prohibits its use in evidence unless the injured party is given a copy of it within 30 days. No such copy was furnished plaintiff here. The statement was taken in shorthand, and a transcription thereof made and mailed to the insurer but not to plaintiff. The trial court correctly ruled that the transcription was inadmissible under the statute. This was circumvented by having the witness who had taken the shorthand notes refer thereto to refresh her memory and then relate in evidence plaintiff's responses to the questions he was asked relative to the accident as noted therein. In permitting this procedure, we feel the trial court was in error. The statute seeks to prevent unfair practices in the procurement of statements from injured parties. Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260. It does not specify that such statements be signed, and it would seem that if the obvious purpose of the statute is to be fulfilled *any* written statement or memorandum taken under the circumstances described, whether in shorthand, longhand, or typed, or any statement recorded by tape, wire, or otherwise would be encompassed within its terms. The rejection of a transcription of shorthand notes of such a statement would afford no statutory protection if the contents thereof are nevertheless received by the simple device of having the witness refresh her memory from the shorthand notes and thereafter relate plaintiff's responses as contained therein."

■ To hold otherwise would completely nullify the purpose of the statute. However, we believe the statement taken from Stippel is not within the protection of the statute, much as we would prefer to have it apply to

any injured person from whom a statement is taken in order to eliminate the sharp practices that so often prevail in personal injury cases. This provision of our statutory law was first enacted as part of L. 1929, c. 289, which was apparently aimed primarily at controlling solicitation of personal injury business. As originally enacted, it read (§ 4):

"Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent for use in the trial of any action for damages for injuries sustained by such person or for the death of such person."

Obviously, as originally enacted it applied only to a statement taken from an injured person who sues to recover for his damages or whose trustee seeks to obtain damages for his death. The statute was amended by L. 1945, c. 592, § 1, by the addition of the italicized portion below, and has remained the same since that time:

"Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent in the trial of any action for damages for injuries sustained by such person or for the death of such person *as the result of such injuries. No statement can be used as evidence in any court unless the party so obtaining the statement shall give to such injured person a copy thereof within 30 days after the same was made.*"

Thus, the portion of the statute which makes the statement inadmissible unless a copy is furnished to the injured person first came into being by the 1945 amendment. The words "such person" and "such injured person" used throughout the statute can have reference only to the one who has given the statement and seeks to recover in an action for the injuries sustained. Stippel was not seeking, in this third-party action, to recover for his injuries. To the contrary, he was one of the defendants in the action brought by Hillesheim. Inasmuch as the court improperly excluded the statement, there was no prejudicial error in admitting its contents. The statement was admissible against Stippel as inconsistent prior statements in the action brought by Stippel against Integrity.

■ It is claimed that the statement of Hillesheim is inadmissible be-

cause it was taken within 30 days of the accident and under § 602.01 it is presumably fraudulent. Even if we were to assume that § 602.01 applies to Hillesheim, who is not a party in the third-party action by Stippel against Integrity, the inadmissibility of his statement is, at best, based on a rebuttable presumption. When evidence was introduced to show under what circumstances the statement was taken, the presumption disappeared. Koenigs v. Thorne, 226 Minn. 14, 31 N. W. (2d) 534. The only questions thereafter were whether it was fraudulently obtained and, if not, the weight to be given to it. Both questions were for the trial court to determine.

◼ In the absence of a statutory proscription, the use of the statement prepared by Arne after interviewing Stippel was proper, both for impeachment and as substantive evidence. Lovel v. Squirt Bottling Co. of Waconia, Inc. 234 Minn. 333, 48 N. W. (2d) 525. See, also, Price v. Grieger, 244 Minn. 466, 70 N. W. (2d) 421.

◼ It was also proper to use the statement made after interviewing Hillesheim for the purpose of impeaching him. State v. Saporen, 205 Minn. 358, 285 N. W. 898; State v. Mlynczak, 268 Minn. 417, 130 N. W. (2d) 53. As to the proper method of using it, Hillesheim not being a party to the third-party action, see Price v. Grieger, *supra.*

◼ The main dispute in the case relates to the arrangement, if any, that existed between Stippel and Hillesheim. At the trial, Stippel, Hillesheim, and Hillesheim's wife denied that there was any agreement or understanding that Hillesheim should work for Stippel in payment for rent. Their testimony at that time was that what little Hillesheim did, he did gratuitously; he was under no obligation to do any work; and nothing he did was under the control of Stippel. Their pretrial statements being admissible, the question whether they were telling the truth at the time of the trial or as recorded by Arne became a question of credibility for the trial court's determination. Objections were made to the admission of the statements in evidence. The trial court originally reserved ruling and finally excluded the statement of Stippel but permitted Arne to testify to just about everything in it by refreshing his memory from it and then testifying from what he had read. The statement of Hillesheim was ultimately admitted in evidence.

In the statement prepared by Arne after interviewing Stippel we find, among other things, the following:

"* * * Gregory Hillesheim and my daughter, who were married on 6/18/66, live at the farm house on the farm. Greg works off the rent by working on the farm during the weekends. If he works quite a bit, I some times even pay him a $1.00 an hour. Greg doesn't own any of the equipment, livestock or land, nor does he share in the profits or expenses of the farm. I figure the rental on the house to be about $50.00 a month. Greg is regularly employed by Super Sweet Company on one of their re-search farms.

"On Oct. 8, 1966 I got to the farm at about 7:00 A. M. The first thing I did was the chores. Greg was helping me with the chores. The combine had a pin shear off and this had to be fixed. Greg and I fixed the com-bine so that it was ready to harvest the soybeans. It was a nice day, and I recall that because it was a good day for combining beans. After we got through with the combine, we were going to a neighbor's to pick up some bales of hay for the feeder cattle. * * *

"Before Greg Hillesheim and my daughter got married, he was living at the farm. At that time he also lived at the place rent free, in return for help from him during the weekends. He also helped around the farm, sometimes when he got through with his own work, this being during the week days. I have paid Greg about $300.00, over and above his rental, over the past year for work he has done for me.

"I have read the above report of 1 2/3 pages and it is true & correct to the best of my knowledge. (This report was read to John Stippel by Richard O. Arne.)"

In Hillesheim's statement we find the following:

"My name is Gregory Hillesheim and I am 21 years of age. I am mar-ried and live at Rt. #1 Gibbon, Minn. I am employed by Super Sweet on their research farm at Cortland, Minn. I have been employed by them for about 17 months. We are living on the John Stippel farm and I do help John on his farm during the week-ends. He has a 160 acres. I am not paid, although I do help him as sort of working my rent out, so

actually I am having the farm house rent free. If I was paying rent, it would be around $50.00 a month.

"On Oct. 8, 1966, John Stippel came to the farm at about 7:00 A. M. As I recall, I helped John with the chores, feeding the cattle & hogs. * * * After chores John and I worked on the combine and got it fixed. * * * So after we finished with repairing the combine we were going to get a few bales [of] hay, which was going to be mixed with corn, for feed for the steers. * * *

"* * * It was before we got married that John told me that we could live in the house rent free if I would be willing to help him on weekends. I have actually lived in the house since last December 1965. This is when John & Mrs. Stippel moved to St. George, Minn. I had the same arrangement then as we do now.

\* \* \* \* \*

"I have read the above report of 2 2/3 pages and it is true and correct to the best of my knowledge and I have received a copy."

■ The trial court in concluding there was no coverage of Hillesheim's claim felt bound by Lowry v. Kneeland, 263 Minn. 537, 117 N. W. (2d) 207. While the facts in that case are not the same as here, we did explore the meaning of the word "employee" in an insurance policy. That case is the opposite of this one, in that in Lowry an employee was included within the policy—here an employee is excluded. In Lowry we applied the rule that if there was ambiguity the contract should be construed against the insurer. Stippel now contends we should apply the same rule so as to arrive at an opposite result from Lowry. We are not persuaded that we should so slavishly follow a rule of interpretation as to arrive at one result if the employee is included in the policy and the opposite result if he is excluded. In Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695, we concluded that many of the cases involving a determination of the existence of an employer-employee relationship involved the right to recover workmen's compensation benefits, and we declined to construe the word "employee" in an action to recover damages for death by wrongful act in a manner that would be contrary to the construction that would be given to the same

facts if the case involved the right to recover workmen's compensation benefits. We said (266 Minn. 424, 123 N. W. [2d] 698):

"* * * [U]nder a given set of facts we cannot justify inconsistent conclusions simply because a common-law action may be involved in one case and a workmen's compensation claim in another."

In Milbank Mutual Ins. Co. v. Biss, 281 Minn. 260, 266, 161 N. W. (2d) 622, 625, where the facts are not too dissimilar from those now before us, we again said:

"* * * [W]e are unwilling to hold that one who is injured is an employee for purposes of applying the compensation act but is not an employee for purposes of affording liability insurance coverage."

The same is true here. If his prior statement is accepted as the truth, Hillesheim's testimony at the trial was completely impeached. On the basis of Stippel's statement and Arne's testimony, it would be difficult to hold that Hillesheim was not an employee if the case involved his right to recover workmen's compensation benefits. That being so, the evidence at least created a question of fact for the trial court, to be determined by acceptance of the testimony of these witnesses at the trial or of their statements made to Arne.

■ Finally, Stippel contends that Integrity has waived its defense or should be estopped from asserting it due to its failure to promptly deny coverage. Apparently it is third-party plaintiff's contention that he has been prejudiced by Integrity's conduct in that had he known sooner that coverage would be denied he could have made a more thorough investigation of the accident himself. It is possible that in a proper case this contention might be tenable. It would seem to us that if an insurer is to deny coverage it ought to do so promptly once it has had time to determine the basic facts upon which to base its judgment that the insurance does not cover the loss involved. It is only a matter of fair dealing that it do so. The trouble in this case is that Stippel has failed to establish any prejudice as a result of the delay. There were numerous claims made by one party against the other. It was not until the injured parties had recovered sufficiently so that they could be interviewed that Integrity could ascertain facts upon which it based its decision to deny coverage. We

are not unmindful of the letter written by Integrity's investigator requesting that it withhold a denial of coverage until the claim of the 9-year-old boy who was killed in the accident could be settled, in order to keep that claim out of the hands of an attorney. While this conduct comes perilously close to that which would require an estoppel, when we consider all of the facts in the record we are persuaded that the record fails to show that Stippel or his counsel were deprived of any material information they would have had if disclosure had been made sooner. Under the circumstances, we are of the opinion that there has been no such waiver of the insurer's right to assert its defense as would work an estoppel.

In view of the fact that we are convinced the trial court was justified in holding that there was no coverage, we need not pass upon the question of whether counsel is entitled to recover attorneys' fees and expenses.

Affirmed.

MR. JUSTICE SHERAN and MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.