**HOME MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Philip W. SNYDER, Jeffrey Strike, Austin Mutual Insurance Company, Respondents.**

No. C0–84–797.

Court of Appeals of Minnesota.

Oct. 30, 1984.

John M. Sheran, Farrish, Johnson, Maschka & Hottinger, Mankato, for appellant.

David A. Joerg, Joerg & Benson, Preston, for Philip W. Snyder.

Lawrence E. Maus, Baudler, Baudler & Maus, Spring Valley, for Jeffrey Strike.

Donald E. Rysavy, Hoversten, Strom, Johnson & Rysavy, Austin, for Austin Mut. Ins. Co.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

This case arises from a single-vehicle accident occurring while the driver, Philip Snyder, a Minnesota farmer, was delivering potatoes to various retail outlets in Iowa. He was accompanied by his son-in-law, Jeffrey Strike, and his daughter, Sylvia Strike. Jeffrey Strike was seriously injured in the accident. He sought no-fault benefits from Snyder's insurer, Home Mutual Insurance Co., and from the insurer of his own vehicle, Austin Mutual Insurance Co.

Home Mutual brought a declaratory judgment action to determine whether Snyder's policy would cover Strike's injuries, since he was a part-time employee of Snyder's and the policy contained an exclusion for injuries to employees occurring in the

course of their employment; it also sought a determination of which company's no-fault coverage applied. Home Mutual now appeals from a grant of summary judgment determining that Snyder's liability coverage applied to Strike's injuries and that Home Mutual was responsible for the no-fault benefits as well. We affirm in part, reverse in part, and remand.

## FACTS

Philip Snyder was engaged in the business of potato farming and, as part of that business, delivered potatoes to retail outlets in southern Minnesota and northern Iowa. Snyder's truck, used in making the deliveries, was insured by Home Mutual. The policy contained the following employee exclusion clause:

> This coverage does not apply to: * * * (4) Bodily injury to an employee of an insured person arising in the course of employment. But, coverage does apply to a domestic employee unless benefits are payable or are required to be provided for the domestic employee under a workers' compensation law or similar law.

Strike was Snyder's son-in-law and part-time employee. During the harvest in October 1982 Strike's job was to drive alongside the potato harvester with a bulk truck. Later Strike began washing, grading, and packing potatoes in the potato warehouse. The number of hours he worked varied from week to week.

Snyder asked Strike to accompany him on a delivery route into northern Iowa. During the course of the trip, a single-vehicle accident occurred and Strike was seriously injured.

Strike accompanied Snyder on the day of the accident for two reasons. First, Snyder wanted Strike to learn the delivery route because he thought that sometime in the future Strike might substitute for him if he were unavailable. Second, Snyder wanted some company because the ride was long.

Strike did not receive wages for riding along with Snyder. He did not drive on the day of the accident nor was he legally able to do so, since he did not have a chauffeur's license. Strike did not help unload the truck, and Snyder did not introduce him to the produce manager in Humboldt, the only delivery made before the accident.

Snyder did not have workers' compensation insurance at the time of the accident because, as the operator of a small family farm, he was statutorily exempt from any requirement to carry such insurance.

At the time of the accident, Strike owned a personal automobile insured by Austin Mutual Insurance Co. Strike began a declaratory judgment action to determine which insurer was responsible for providing no-fault benefits. That action was resolved when Home Mutual agreed to accept responsibility for the no-fault benefits subject to its claim that Strike was acting as an employee at the time of the accident. Home Mutual thereby retained its right to be reimbursed by any no-fault carrier found to have priority coverage under Minn.Stat. 65B.47 (1982).

Home Mutual paid Strike's no-fault benefits and began this declaratory judgment action to determine the application of the "employee exclusion" provision in Snyder's insurance policy and its priority level for purposes of no-fault insurance benefits.

On cross-motions for summary judgment, the trial court found that (1) no employer-employee relationship existed between Snyder and Strike at the time of the accident, and (2) Minn.Stat. § 65B.47, subd. 1 (1982), is the applicable priority level because the vehicle was being used "in the business of transporting persons or property" at the time of the accident.

## ISSUES

1. Is there a genuine issue of material fact as to whether Strike was, at the time of the accident, acting within the course and scope of his employment with Snyder?

2. Was the vehicle "being used in the business of transporting persons or proper-

ty" and hence within the priority defined in Minn.Stat. § 65B.47, subd. 1 (1982)?

## DISCUSSION

### I

■ At oral argument it was urged that since the issue of whether Strike was acting within the course and scope of his employment at the time of the accident depended entirely on the testimony of those two men, and since this court had the deposition testimony of both before it, our function was to weigh that testimony and either affirm the grant of summary judgment or order it entered against the other carrier. We do not agree that cross-motions for summary judgment obviate the need for trial of this issue.

■ Summary judgment may be granted if "there is no genuine issue as to any material fact." Minn.R.Civ.P. 56.03. The nonmoving party has the benefit of that view of the evidence which is most favorable to him and is entitled to have all doubts and factual inferences resolved against the moving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). Summary judgment is a "blunt instrument" and "should be employed only where it is perfectly clear that no issue of fact is involved." *Donnay v. Boulware,* 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). However, it does serve a "salutary purpose of avoiding useless and time consuming trials." *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982).

■ When reviewing the district court's entry of summary judgment, this court applies the same standard to determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). *See also Jewson,* 691 F.2d at 408 (the reviewing court uses the same standard as the district court).

In this instance, the deposition testimony is such that each nonmoving party, benefited by that view of the evidence most favor-

able to him and with doubts and inferences in his favor, is insulated from summary judgment, and the resulting hiatus renders trial of the issue necessary. A trier of fact, with witnesses present in the flesh, with an opportunity to observe their demeanor and apparent candor, and with counsel being afforded a further opportunity to elicit testimony, will be in a vastly better position than an appellate court to decide what appears to us to be a relatively close factual question.

■ Home Mutual argues vigorously that workers' compensation coverage would be found as a matter of law on the facts presented, were that the issue. Given the remedial nature of that statute and the liberal interpretative standard applied generally to find coverage and accomplish the purposes of that legislation, that may be the case. Here, however, we are construing an insurance policy exclusion and the interpretative standard is quite different. The language is to be interpreted strictly against the drafter of the policy. The workers compensation standard cannot be applied because Snyder's farming operation is exempt from the requirement of that mandatory insurance coverage under the law.

■ The primary issue in this case is whether Strike was acting in the course and scope of his employment with Snyder at the time of the accident, since it appears that Strike may have accompanied Snyder for both business and personal reasons. There have been a number of cases in Minnesota involving injuries incurred while mixed purposes were being served. *See, e.g., Williams v. Hoyt Construction Co., Inc.,* 306 Minn. 59, 237 N.W.2d 339 (1976); *Oestreich v. Lakeside Cemetery Association,* 229 Minn. 209, 212, 38 N.W.2d 193 (1949); *Kayser v. Carson Pirie Scott & Co.,* 203 Minn. 578, 282 N.W. 801 (1938). Emerging from such cases is the dominant-purpose rule, which provides:

> Accidental injury to an employe [sic] while traveling on a public street and highway arises out of and in the course

of the employment when the employment makes such travel necessary. It is not necessary that the sole purpose of such travel is to serve the employer's purposes, but it must be the dominant one—the one which necessitated such travel. The test is whether the employe's work created the necessity for travel. If it did, the employe is in the course of his employment, even though he is serving at the same time some purpose of his own.

*Oestreich,* 229 Minn. at 212, 38 N.W.2d at 196.

▆ Home Mutual contends that the dominant purpose behind Strike's road trip with Snyder was to teach Strike how to handle the delivery route so that he could perform that duty sometime in the future. In support of its position Home Mutual cites *Hillesheim v. Stippel,* 283 Minn. 59, 166 N.W.2d 325 (1969), wherein the Minnesota Supreme Court affirmed the trial court's finding that an individual was injured in the course of employment within the meaning of an exclusionary clause in an insurance policy. In *Hillesheim* the insured's son-in-law had been receiving free rent and occasional wages in return for helping the insured with farm chores. He was injured while riding along with the insured in a truck to obtain a load of hay for use in feeding the insured's livestock.

In contrast, Strike and Austin Mutual argue that the facts in this case compel the conclusion that Strike accompanied Snyder predominantly for personal reasons, the business purpose being minor and not a part of his normal duties. Austin Mutual cites *Austin-St. Paul Mutual Insurance Co. v. Belshan,* 297 Minn. 522, 211 N.W.2d 517 (1973), in which a liability carrier brought a declaratory judgment action against Belshan, its insured, to determine whether a third person, Orwick, injured in an accident on Belshan's farm, was an independent contractor or an employee and therefore excluded from insurance coverage. Orwick was hired to mow hay on Belshan's farm. As Orwick mowed, Belshan followed with a tractor and crimper. The crimper broke down and Orwick was injured while helping Belshan repair it. The Minnesota Supreme Court found that at the time of his injury Orwick was acting as a gratuitous volunteer and not an employee.

Although the present case contains facts similar to both *Hillesheim* and *Belshan,* neither case is controlling. A close factual question exists as to the dominant reason for Strike's presence in the truck with Snyder at the time of the accident. That determination is for the trier of fact, not an appellate court; therefore, summary judgment is not appropriate.

## II

Strike claims coverage by Home Mutual under Minn.Stat. § 65B.47, subd. 1 (1982), which provides in relevant part:

> In case of injury to the driver or other occupant of a motor vehicle * * * if the accident causing the injury occurs while the vehicle is being used in the business of transporting persons or property, the security for payment of basic economic loss benefits is the security covering the vehicle * * *.

Home Mutual claims that Strike was an employee-occupant of a motor vehicle furnished by his employer, and the applicable priority level is therefore Minn.Stat. § 65B.47, subd. 2 (1982):

> In case of injury to an employee, * * * if the accident causing the injury occurs while the injured person is driving or occupying a motor vehicle * * * furnished by the employer, the security for payment of basic economic loss benefits is the security covering the vehicle * * *.

If this were true, Home Mutual's exclusionary clause would deny him coverage.

In the alternative, Home Mutual argues that if Strike was not an employee under subdivision 2, neither is he qualified for coverage under subdivision 1, since the ve-

hicle was not being used in the "business of transporting persons or property." Such a finding would allow Home Mutual to obtain reimbursement from Austin Mutual for no-fault benefits paid to Strike because the next applicable priority level is Minn.Stat. 65B.47, subd. 4 (1982), the security under which the injured person is an insured.

Home Mutual contends that to qualify under subdivision 1 the vehicle must be used in the sense that trucking, bus or taxicab company vehicles are used "in the business of" transporting persons or property, that is, "for hire." Since Snyder is in the business of farming, the argument goes, the vehicle does not qualify.

We agree with the trial court that Minn.Stat. § 65B.47, subd. 1, is the applicable priority level. The no-fault statute is remedial in nature, requiring a liberal interpretation. Thus, the narrow construction urged by Home Mutual will not stand. Snyder was clearly using the truck in the business of transporting potatoes to his outlets in Iowa. Furthermore, subdivision 1 applies whether or not Strike was injured in the course of employment. Since Minn.Stat. § 65B.47 sets forth priorities for applicable no-fault insurance coverage, and since Strike qualifies under the language of subdivision 1 regardless of his employment status, subdivision 2 is inapplicable.

## DECISION

A genuine issue of material fact exists as to whether Strike was acting within the course and scope of his employment at the time of the accident; therefore, summary judgment is not appropriate. Minn.Stat. § 65B.47, subd. 1 (1982), is the priority level applicable to Strike because the truck being used by Snyder to deliver his potatoes to retailers was "being used in the business of transporting persons or property."

Affirmed in part, reversed in part, and remanded for trial.