**CONVENT OF THE VISITATION SCHOOL, Plaintiff,**

**v.**

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**Civ. No. 4–87–926.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 24, 1989.

Rolf E. Gilbertson, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, Minn., for plaintiff.

Shirley S. Okrent, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Convent of the Visitation School (Convent) brought this breach of contract action against defendant Continental Casualty Company (CCC). Diversity jurisdiction is alleged. Now before the court is each party's motion for summary judgment.

### I.

Convent owns and operates a primary and secondary school in Mendota Heights, Minnesota. It purchased an insurance policy, Board of Education Liability Policy No. 318 2724-2, from CCC, an Illinois corporation with its principal place of business in Illinois. The policy insured Convent from losses resulting from wrongful acts of its employees, subject to certain exclusions, for the period November 1, 1983 to December 1, 1986.

Gregory and Debbie Karnes, a married couple, worked for Convent as maintenance/janitorial employees. On December 30, 1985, Debbie Karnes notified Convent's headmaster, Urban Langer, that she intended to resign. Langer told her that her husband would be fired if she quit. Shortly thereafter, Gregory Karnes informed Langer that his wife had resigned, and Langer fired him.

Gregory Karnes filed a marital discrimination claim against Convent with the Minnesota Human Rights Department pursuant to Minn.Stat. § 363.03, subd. 1(2)(b). He sought treble damages for lost wages and benefits, as well as damages for mental anguish, punitive damages, and attor-

neys' fees. Convent settled the claim for $15,000 and received a release from Karnes for all claims relating to his termination of employment.

Convent filed this suit in Minnesota state court seeking reimbursement for the amount of the settlement and $7,600 in attorneys' fees relating to it. CCC removed the suit to this court alleging jurisdiction under 28 U.S.C. § 1332. Convent initially made claims against both CCC and its affiliate, CNA Insurance Companies (CNA). CNA was dismissed by United States Magistrate Bernard P. Becker's order filed June 29, 1988.

■ Convent and CCC have each moved for summary judgment. On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, however, the non-moving party must show through specific evidence that there are material facts in dispute creating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). It may not rest only upon the allegations or denials of its pleadings.

## II.

CCC makes several arguments for summary judgment or partial summary judgment. It asserts that the settlement was not a loss within the terms of the policy and that if there was a loss, it is either excluded under the terms of the policy as a payment for breach of contract or uninsurable as a matter of law. At a minimum, CCC contends, payments for treble and punitive damages do not constitute losses under the policy and damages relating to mental anguish are expressly excluded.

CCC argues that the settlement was not a "loss" within the terms of the policy. It asserts that a loss must result from a "wrongful act" and that the firing of Gregory Karnes does not amount to one. It characterizes the settlement as merely the payment of monies owed as a result of an employment agreement.

Convent responds that CCC conceded that the loss was covered in a letter to Convent prior to the settlement. It argues that CCC should be estopped from raising this argument now since it relied on CCC's statements when it settled the claim.

■ The settlement constitutes a loss under the policy. Interpretation of a contract is generally for the court. *Realex Chem. Corp. v. S.C. Johnson & Son, Inc.*, 849 F.2d 299, 302 (8th Cir.1988). The policy's insuring clause covers Convent for liability resulting from any "wrongful act."[1] It defines a wrongful act as "any actual or alleged errors ... or act or omission or neglect or breach of duty by the Assureds in the discharge of their duties...." Convent's headmaster, Urban Langer, was an "assured" under the policy. Therefore, the policy covered Convent for any liability it incurred from Langer's actions.

Convent's liability resulted from Langer's alleged unlawful act. His termination of Karnes in violation of Minn.Stat. § 363.03 would be a wrongful act under the plain language of the policy. Langer's alleged act caused Convent, with CCC's consent, to enter into the settlement with Karnes. Convent's settlement of claims made pursuant to the statute, therefore, is a loss under the policy.

■ CCC asserts that, if the settlement was a loss under the policy, it was excluded by provision IV(b)(6). The policy provides:

(b) The Insurer shall not be liable to make any payment for loss in connec-

---

1. The policy, as amended by endorsements 1 and 3, provides:

   The Insurer ... agrees as follows:

   .    .    .    .    .

   (c) With the Private School that if during the policy period any claim or claims are made against it as a result of any Wrongful Act

   occurring during the policy period, the Insurer will pay on behalf of, in accordance with the terms of this policy, [the Private School] all loss which the Private School shall become legally obligated to pay.

   It defines loss as "any amount which the ... Private School [is] legally obligated to pay...."

tion with any claim against the Assureds, and/or the Private School.

.    .    .    .    .

(6) For any amounts due, under the terms of any contractual obligation....

CCC states that the only reasonable interpretation of this language is that it excludes from coverage all amounts owed which are "in any way related to a contract." It argues that the settlement payments were made pursuant to Karnes' employment contract because the amounts sought by Karnes were calculated according to the compensation he would have received under it.

Convent counters that a more plausible reading of the exclusion is that there is no coverage for "amounts due for breach of contract." It adds that exclusions from coverage are to be strictly construed and that ambiguities are to be construed against the insurer. *Columbia Heights Motors v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979); *Home Mut. Ins. Co. v. Snyder*, 356 N.W.2d 780, 783 (Minn.App. 1984).

Section 363.03 provides a statutory action independent of any contract remedies which might be available. The policy's exclusion addresses claims made pursuant to a contract. While the statutory claim and the contract claim may relate to the same set of facts, they remain distinct from one another. Convent's payments to settle Karnes' § 363.03 claims were not made "in connection with any claim" for "amounts due under the terms of" his contract. Thus, they are not excluded under provision IV(b)(6) of the policy. The ambiguity in the exclusion does not create a genuine factual issue so as to preclude summary judgment. *Id.*

■ CCC also contends that payments for unlawful breaches of employment contracts should be deemed uninsurable under the law. It makes two arguments in support of this contention. First, it suggests that if recovery for statutory claims were allowed, employers could shift their labor costs onto their insurers. For instance, it suggests that an employer who wished to fire an employee in breach of her contract could purposefully do so in violation of § 363.03. Compensation to the employee would then be divided between the uninsured breach of contract action and the insured statutory action. Second, it argues that Convent should not be able to insure itself against unlawful actions by its employees. It cites only one case in support of its contention, *Central Dauphin School District v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981). There, the court held that a school could not insure itself against the "loss" of having to return funds that it collected illegally.

Convent points out that *Central Dauphin* was based on the public policy of preventing governments from profiting from illegal taxes. It argues that the decision is inapplicable in this case. It also notes that people are commonly permitted to insure against their own unlawful acts or those of their employees.

CCC has not offered any authority supporting its position. The one case it cites, *Central Dauphin*, is inapplicable. In addition, there is no suggestion that § 363.03 was purposefully used to shift the liability of Karnes' dismissal in this case. CCC has failed to show that unlawful acts relating to termination of employment are uninsurable.

CCC has failed to support its claims that the loss was not covered by the policy, was excluded by the policy, or was uninsurable. Its motion for summary judgment will therefore be denied.

■ CCC seeks partial summary judgment for the portion of the settlement payments relating to punitive damages, mental anguish, and treble damages. Convent concedes that it cannot recover for payments made to settle claims for punitive damages and mental anguish. But it asserts that payments for treble damages are covered by the policy.

CCC argues that the payment for Karnes' claims for treble damages is uninsurable under Minnesota law. Treble damages under § 363.071, subd. 2, it asserts, were designed to punish the employers for

willful or reckless disregard of their employees' rights. Allowing insurance to reimburse employers for such damages would defeat the purpose of punishment and deterrence and contravene public policy, CCC claims.

CCC cites one Minnesota case in support of this assertion, *Wojciak v. Northern Package Corp.*, 310 N.W.2d 675 (Minn. 1981). Rather than supporting defendant's position, however, *Wojciak* significantly undermines it. Wojciak sued his employer for retaliatory discharge under Minn.Stat. § 176.82 (1980) when he was fired after making a claim for workers' compensation. The employer then sued its insurer for reimbursement. The insurer argued that public policy prohibited the employer from insuring against a claim for "punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled," as was authorized by § 176.82.

The supreme court held in *Wojciak* that in most instances punitive damages were uninsurable under Minnesota law. *Id.* at 680. It made an exception for punitive damages under § 176.82, however. *Id.* at 680–81. Under that statute, the court held, the multiple damages were not only to punish and deter, but to afford redress to employees who were wrongfully dismissed. The court also noted that the damages under the statute were limited to a fixed multiple and not necessarily reflective of a judgment concerning the culpability of the employer's conduct.

The same factors considered in *Wojciak* apply to the treble damages allowed under § 363.071, subd. 2 for wrongful termination under § 363.03. The general purpose of the Minnesota Human Rights Act, §§ 363.01–.15, is to redress the wrongs suffered by the victims of discrimination. *Brotherhood of Ry. & S.S. Clerks v. State,* 303 Minn. 178, 195, 229 N.W.2d 3, 13 (1975). Treble damages are a fixed multiple of the compensatory damages. And, the degree of culpability of the employer need not be considered in awarding treble damages.

The compensatory nature of treble damages under § 363.071 is even clearer than the punitive damage provision under § 176.82. It labels the treble damages as "compensatory damages," and it only triples the actual proven damages whereas § 176.82 quadruples them. Section 363.071 also provides for punitive damages in addition to treble damages.

CCC's motion for partial summary judgment will be granted as to the portions of the settlement relating to punitive damages and mental anguish. It will be denied in all other respects.

### III.

■ Convent has moved for summary judgment. It contends that all amounts paid under the settlement related to claims which were covered by the policy. CCC responds that the settlement release covered all the claims arising from Gregory Karnes' dismissal and that a portion of the $15,000 settlement payment was for claims which were not covered by the policy.

Under Minnesota law, the court may interpret a settlement agreement and determine the allocation of payments between claims which are insured and claims which are uninsured. *Josten's, Inc. v. CNA Ins./Continental Casualty Co.*, 403 N.W. 2d 625 (Minn.1987), involved a situation similar to this case. There, Josten's settled an employment discrimination case and then sought indemnification from its insurer. The court found that only a portion of the settlement was for claims covered by the policy. It made a finding as to which portions of the settlement related to insured claims and allocated the settlement accordingly. *Id.* at 629–31.

CCC contends that the Karnes settlement involved treble damages, punitive damages, damages for mental anguish and breach of contract, and Karnes' attorneys' fees. CCC acknowledged in a letter to Convent approving the proposed settlement that $5,000 of the settlement related to Karnes' attorneys' fees and would be covered by the policy. The parties disagree about how much of the remaining $10,000 of the settlement related to treble damages, which were covered by the policy, and how much related to punitive damages

and damages for mental anguish and breach of contract, which were not covered by the policy.

Convent argues that no breach of contract damages were contemplated in the settlement. It argues that Karnes was an employee at will who could be terminated without cause and without notice. It offers Langer's affidavit indicating that Karnes was hired without any discussion of the terms of his employment.

CCC alleges that there may have been an oral contract assuring Karnes that he would not be fired without cause. In support, it offers Karnes' deposition testimony where, in response to a number of suggestive questions, he agreed that he thought he had an understanding that he would not be dismissed in the way that he was.

Convent also contends that the settlement did not include any amounts for punitive damages and mental anguish. It offers evidence that at a conference held by the administrative hearing judge to settle Karnes' claim, the judge indicated that he did not feel punitive damages or an award for mental anguish were appropriate.

CCC points out that Karnes sought punitive damages and a mental anguish award in a letter his attorney sent to the Minnesota Department of Human Rights. The letter indicated that Karnes sought $148,888.20 in treble damages, $6,000 in punitive damages, and an unspecified amount for mental anguish and attorneys' fees. The letter indicated that Karnes was willing to settle the claim for $154,888.20.

Convent has demonstrated that the settlement gave insignificant consideration to any breach of contract claims Karnes may have had and only minimal consideration to his punitive damages and mental anguish claims. The court finds that $400 of the settlement related to claims which were not covered by the policy.

CCC concedes that the policy also covers $7,501.05 of Convent's attorneys' fees relating to defense of the Karnes action. Convent's motion for summary judgment should be granted as to the attorneys' fees and the $14,600 portion of the settlement for a total of $22,101.05.

Accordingly, based upon the above, and all the files, records, and proceedings, herein, IT IS HEREBY ORDERED that:

1. The motion of defendant Continental Casualty Company for summary judgment is granted as to amounts in the Karnes settlement relating to punitive damages, breach of contract, and mental anguish. It has no obligation to plaintiff for that amount of $400. In all other respects its motion for summary judgment is denied.

2. The motion of plaintiff Convent of the Visitation School for summary judgment is granted for the portions of the Karnes settlement relating to treble damages and Karnes' attorneys' fees and for its attorneys' fees incurred in defending against Karnes' claims. Defendant is liable to plaintiff in that amount of $22,-101.05.

LET JUDGMENT BE ENTERED ACCORDINGLY.