Michael E. WOJCIAK, Respondent,

v.

NORTHERN PACKAGE CORPORATION, Defendant and third party Plaintiff, Respondent,

and

National Surety Corporation, et al., third party Defendants, Appellants.

No. 81–181.

Supreme Court of Minnesota.

Oct. 9, 1981.

---

Cragg & Bailly and Gary J. Gordon, Minneapolis, for National Surety Corp. et al.

John T. Anderson, Minneapolis, for Wojciak.

Phillips, Gross & Aaron, Minneapolis, for Northern Package Corp.

PETERSON, Justice.

Michael Wojciak brought an action in Hennepin County District Court against Northern Package Corporation seeking damages for wrongful discharge, alleged to have been a retaliation for his making a

claim for workers' compensation. Northern tendered defense of the action to National Surety Corporation, which had furnished it a standard workers' compensation and employers' liability policy, and to American Insurance Company, which had furnished it a general liability policy. Upon the insurers' refusal to defend, Northern served an answer denying the alleged retaliatory discharge and then commenced a third-party action against the insurers seeking a declaratory judgment that they are required to defend Northern in the Wojciak action and to pay any judgment attained by Wojciak. The insurers interposed answers denying coverage and alleging that the intent of Minn.Stat. § 176.82 (1980), upon which Wojciak based his action, was to deter employers from retaliatory dismissals of employees seeking compensation and that public policy therefore precludes indemnification of such employers by insurance.

Upon cross-motions for summary judgment, the trial court granted Northern's motion, holding that each insurer's policy furnished coverage of Wojciak's claim and required defense of the action by the insurer, that Northern was entitled to be reimbursed for reasonable attorney fees expended in defense of the action, and that Northern was entitled to attorney fees of $4,000 in the third-party action. Both insurers have appealed. We affirm the judgment against National, the workers' compensation insurer, and reverse it against American, having concluded that National's policy required it to defend the Wojciak action and to pay any recovery made by him, that American's policy did not so require, and that the coverage afforded by National is not violative of public policy because of the unique character of the statute authorizing the employee's action and because of the relationship existing between a workers' compensation insurer and its insured.

1. *Insurance Coverage and Duty of Defense.*

As stated, the Wojciak action was premised upon Minn.Stat. § 176.82 (1980), which provides:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for *damages incurred by the employee including any diminution in workers' compensation benefits* caused by a violation of this section including costs and reasonable attorney fees, and for *punitive damages not to exceed three times the amount of any compensation benefit* to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled. (Emphasis added).

National's denial that its policy extended coverage for any recovery Wojciak might make against Northern requires review of its policy. The pertinent provisions of the policy include the following:

### INSURING AGREEMENTS

I. Coverages

Coverage A—Workmen's Compensation. To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

Coverage B—Employers' Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease....

. . . .

II. Defense, Settlement, Supplementary Payments

As respects the insurance afforded by the other terms of this policy the company shall:

(a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent ....

. . . .

III. Definitions

(a) *Workmen's Compensation Law.* The unqualified term "workmen's compensation law" means the workmen's compensation law or workers' compensation law and any occupational disease law of a state designated in Item 3 of the declarations, but does not include those provisions of any such law which provide non-occupational disability benefits.

. . . .

### CONDITIONS

. . . .

8. Statutory Provisions—Coverage A. The company shall be directly and primarily liable to any person entitled to the benefits of the workmen's compensation law under this policy. . . .

. . . .

All of the provisions of the workmen's compensation law shall be and remain a part of this policy as fully and completely as if written herein, so far as they apply to compensation and other benefits provided by this policy. . . .

. . . .

16. Terms of Policy Conformed to Statute—Coverage A. Terms of this policy which are in conflict with the provisions of the workmen's compensation law are hereby amended to conform to such law.

■ Northern's position is that the policy affords coverage of the Wojciak claim and required National to provide a defense in that action because the damages the employee might recover therein are "other benefits required of the insured by the workmen's compensation law" within the meaning of Coverage A and because National agreed to provide defense for such an action in Paragraph II(a), quoted above. National argues that the compensatory and punitive damages sought by Wojciak are not "compensation and other benefits required of the insured by the workmen's compensation law." It relies in part on the definition of compensation in Minn.Stat. § 176.011, subd. 8 (1980):

"Compensation" includes all benefits provided by this chapter *on account of injury or death.* (emphasis added).

National insists that "other benefits" is exactly the same as "compensation" in its policy definition. It relies on *St. Martin v. KLA Enterprises, Inc.,* 269 N.W.2d 59 (Minn.1978), in which this court stated that *compensation* and *benefits* are terms used synonymously in the Workers' Compensation Act. In that case we held that the Special Compensation Fund was required to pay an additional award pursuant to Minn. Stat. § 176.225 (1980) for the employer's refusal to pay compensation and rejected the special fund's argument that the additional compensation was not a "benefit" within the meaning of Minn.Stat. § 176.183, subd. 1 (1980), for which the special fund was liable. We said:

A common-sense reading of the statute shows that the additional compensation provisions are intended to be both a penalty and a benefit, since § 176.225 both penalizes the employer for certain acts and designates the employee as the beneficiary of the employer's penalty payment.

A review of the definitions contained in the Worker's Compensation Act shows that the Court of Appeals was correct in stating that the additional compensation, albeit labeled a penalty [in the headnote to section 176.225], is a "benefit" within the meaning of § 176.183, subd. 1. Section 176.011, subd. 8, defines "compensation" as including "all benefits provided by this chapter on account of injury or death." "Benefits" and "compensation" thus are used synonymously in the statute with the result that the penalty which is designated as "compensation" by § 176.225 is a "benefit" within the meaning of § 176.183.

269 N.W.2d at 61.

In reliance on this decision, National claims that "other benefits" in its policy means in effect "compensation"; it then argues that any recovery the employee obtains from an action brought under Minn. Stat. § 176.82 (1980) cannot be "compensation and other benefits" within the meaning

of the policy because that statute provides for recovery of "damages" and "punitive damages" and further provides that they shall not be offset by any "workers' compensation benefits to which the employee is entitled." There is a certain logic in the argument since section 176.82 could have provided that damages "awarded under this section shall not be offset by any *other* workers' compensation benefits" if such damages were included in the definition of compensation in Minn.Stat. § 176.011, subd. 8 (1980).

We have concluded, however, that "compensation" and "benefits," although used as synonyms in the Workers' Compensation Act, were not so used in the policy. Had they been, there would have been no need for the reference in Coverage A to "other benefits." And, if "compensation" and "benefits" meant exactly the same thing, the word "other" would have no function. Instead, assuming that compensation and benefits are synonymous when they relate to wage loss, medical treatment, vocational rehabilitation, and awards under Minn.Stat. § 176.225 (1980), and resolving reasonable doubt as to the meaning of the policy language in favor of the insured, we construe the policy to encompass such benefits in the word "compensation" and to describe other rights granted an employee by the Workers' Compensation Act, including the right to recover damages under Minn.Stat. § 176.82 (1980), in the phrase "other benefits required of the insurer by the workmen's compensation law." Under this construction the policy coverage extends to any liability imposed on Northern as a consequence of the Wojciak action.[1]

Moreover, the policy requires Northern to defend the Wojciak action since paragraph II(a) provides broadly that the duty to defend extends to "any proceeding against the insured seeking such benefits," and the Wojciak action clearly is such a proceeding.

Having determined that National's workers' compensation and employers' liability policy provided coverage and the duty to defend the Wojciak action, and, as discussed hereinafter, that National cannot avoid these obligations on public policy grounds, we need not engage in a similar analysis of the general liability policy furnished Northern by American because, whether or not coverage might otherwise exist, the policy contains an exclusion expressly stating that it does not apply:

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law[.]

Northern's claim that the exclusion was removed from the policy by a subsequent endorsement is entirely without merit. By reason of the unambiguous character of the exclusion, we hold that American's policy neither furnished coverage nor required American to defend the Wojciak action on Northern's behalf.

2. *National's Coverage of Statutory Punitive Damages is not Violative of Public Policy.*

National urges that we hold that public policy prohibits an employer from insuring against a judgment for "punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled," authorized by Minn.Stat. § 176.82 (1980). The issue raised is troublesome in light of the purposes for which punitive damages traditionally have been permitted, to punish a wrongdoer and to deter others from like conduct. Several jurisdictions have held that insurance against punitive damages is violative of public policy. The leading case taking that position is *Northwestern Nat. Cas. Co. v. McNulty*, 307 F.2d 432 (5th Cir.

---

1. One policy condition (paragraph 8) expressly states that all provisions of the workmen's compensation law "shall be and remain a part of this policy as fully and completely as if written herein, so far as they apply to compensation *and other benefits* provided by this poli-

cy." (Emphasis added). Another policy condition (paragraph 16) provides that "[t]erms of this policy which are in conflict with the provisions of the workmen's compensation law are hereby amended to conform to such law."

1962), an action against an intoxicated driver who lost control of his automobile and seriously injured the plaintiff. The *McNulty* court refused to impose liability on the insurer for punitive damages, saying:

> Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.
>
> The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well [as] nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.

307 F.2d at 440–41. Several courts have agreed with this view. *E. g., American Surety Co. of N.Y. v. Gold*, 375 F.2d 523 (10th Cir. 1966); *Crull v. Gleb*, 382 S.W.2d 17 (Mo.App.1964); *American Ins. Co. v. Saulnier*, 242 F.Supp. 257 (D.Conn.1965); *Nicholson v. American Fire & Cas. Ins. Co.*, 177 So.2d 52 (Fla.App.1965); and *LoRocco v. N.J. Mfrs. Indem. Ins. Co.*, 82 N.J.Super. 323, 197 A.2d 591 (App.Div.1964).

Other courts have disagreed, suggesting that the extent to which the imposition of punitive damages deters wanton, outrageous or malicious conduct is speculative and advancing as grounds for imposing liability on the insurer the insured's reasonable expectation of coverage and the state's public policy favoring complete insurance coverage. *See, State v. Glens Falls Ins. Co.*, 137 Vt. 313, 404 A.2d 101 (1979); *Price v. Hartford Acc. & Indem. Co.*, 108 Ariz. 485, 502 P.2d 522 (1972); *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341 (Tex. Civ.App.1972); *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964).

In spite of the lack of certainty concerning the deterrent effect of punitive damages, we are satisfied that in most instances public policy should prohibit a person from insuring himself against misconduct of a character serious enough to warrant punitive damages. In this case, however, we have concluded that the rule should not be applied. We base our decision in part on the fact that Minn.Stat. § 176.82 (1980), although styling the multiple damages authorized therein as "punitive damages," was enacted not only to punish employers guilty of retaliatory discharges and to deter such conduct by others, but also to afford redress to employees who lose their employment as the consequence of retaliatory dismissal. Thus, the statute reflects as much a concern for employees' welfare as it does a desire to punish employers and deter them from the forbidden conduct. We recognize also that there are differences between a statutory award of multiple damages, which represents a fixed amount and does not necessarily reflect a judgment concerning the culpability of the employer's conduct, and an award of punitive damages at common law, which is assessed by the jury and thus reflects the community's condemnation of a defendant's conduct when it is viewed as wanton, malicious, or outrageous. *Cf. Cieslewicz v. Mutual Serv. Cas. Ins. Co.*, 84 Wis.2d 91, 267 N.W.2d 595 (1978). We recognize also that a compensation insurer, by reason of its relationship to the employer-insured, can exert at least some influence on the latter to refrain from conduct giving

rise to claims for the punitive damages allowed by Minn.Stat. § 176.82 (1980). The cumulative weight of these considerations leads us to conclude that coverage for the punitive damages recoverable under this statute is not violative of public policy.

 Appellants have urged also that the trial court's award of $4,000 in attorney fees is excessive. Although the award was clearly liberal, we are unable to say that it was an abuse of discretion.

The judgment is affirmed as to National Surety Corporation and reversed as to American Insurance Company.