The UNITED STATES FIRE INSURANCE COMPANY, Evanston Insurance Company, First State Insurance Company, and Old Republic Insurance Company, Plaintiffs,

v.

GOODYEAR TIRE & RUBBER COMPANY, Defendant.

No. 3-89 CIV 494.

United States District Court,
D. Minnesota,
Third Division.

Dec. 4, 1989.

Faegre & Benson by Scott W. Johnson, Minneapolis, Minn., for plaintiffs The U.S. Fire Ins. Co. and Evanston Ins. Co.

Moss & Barnett by Thomas J. Shroyer, and Scott Herzog, Minneapolis, Minn., for plaintiffs First State Ins. Co. and Old Republic Ins. Co.

Dorsey & Whitney by Daniel P. O'Keefe, Minneapolis, Minn., for defendant.

## ORDER

ALSOP, Chief Judge.

The above entitled action comes before the court on cross motions for summary judgment. Two issues, which are inextricably intertwined, are presented to the court. The first is whether Minnesota or Georgia law should apply to this action. The second is if Minnesota law applies, whether Minnesota public policy bars insurance coverage for a punitive damage award against Goodyear which was a result of a products liability claim which arose and was tried in Minnesota.

## I. FACTS

The facts necessary for the resolution of this motion are not in dispute. On December 19, 1981, Dale Hodder, a Minnesota resident, was seriously injured when the metal rim of a truck tire explosively separated as he was working on it. The rim that exploded was a KWX multi-piece rim (K–Rim) made by Goodyear. Hodder sued Goodyear and its subsidiary, Motor Wheel Corporation, in Minnesota state court. A jury found Goodyear and Motor Wheel negligent on a failure to warn theory and awarded Hodder $3.3 million in compensatory damages and $12.5 million in punitive damages. On review, the Minnesota Supreme Court found that the jury verdict based on Goodyear's failure to warn was sustained by the evidence. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826 (Minn.1988). The Court also exercised its close control over the imposition and assessment of punitive damages and reduced the punitive award to $4 million. *Id.* at 837. The United States Supreme Court subsequently denied Goodyear's petition for a writ of certiorari which challenged the imposition of punitive damages in that case. *Hodder v. Goodyear Tire & Rubber Co.*, —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

The present lawsuit represents the next stage of the Hodder litigation. At the time of the accident to Dale Hodder, Goodyear had insurance coverage with the insurers who are the plaintiffs in this action. The policies purchased by Goodyear collectively provided Goodyear with $25 million in coverage per accident, subject to a $1.5 million deductible to be paid by Goodyear. Goodyear contends that this coverage was intended to cover extremely large awards, including punitive damages, and that over the years it had paid millions of dollars in insurance premiums in return for this anticipated catastrophic coverage. These policies were negotiated, issued, and paid for in Georgia. Goodyear claims that Georgia law should apply in this action and that the policies provide coverage for the *Hodder* punitive damage award. The insurers claim that Minnesota law applies and that Minnesota public policy prohibits insurance for punitive damages. Goodyear is not headquartered in Minnesota, nor does it have manufacturing facilities here, but does do business in this state, as well as all others.

## II. CHOICE OF LAW

### A. *Does a Conflict of Law Exist*

A federal court which has jurisdiction of a case by virtue of diversity must apply the choice of law principles of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The first

step in Minnesota's approach is to determine whether there is an actual conflict between the substantive laws of Minnesota and of the foreign state. *American Casualty Co. v. Bank of Montana System*, 675 F.Supp. 538, 544 (D.Minn.1987). *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 47 (Minn. 1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). The reason for this is obvious. It makes no sense to go through a choice of law analysis if there is no difference as to which law applies.

■ In this case, it is undisputed that under Georgia law, insurance coverage for punitive damages is perfectly legitimate. The parties disagree, however, as to the insurability of punitive damages under Minnesota law. This court must therefore initially determine Minnesota law regarding the insurability of punitive damages.

In *Casperson v. Webber*, 298 Minn. 93, 213 N.W.2d 327 (1973), the Minnesota Supreme Court first expressed its reluctance to allow insurance coverage for punitive damage awards. In that case, the Court held that policy language which stated that an insured would be covered for "all sums" the insured became legally obligated to pay did not include coverage for punitive damages. *Casperson*, 213 N.W.2d at 331. The Court next addressed the issue of insurance for punitive damages in *Wojciak v. Northern Package Corp.*, 310 N.W.2d 675 (Minn.1981). The Court in *Wojciak* quoted at length and quite favorably the leading case holding that punitive damages are not insurable—*Northwestern Nat'l Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962). The court then listed cases from other jurisdictions which had held either for or against the insurability of punitive damages and concluded that:

> [W]e are satisfied that in most instances public policy should prohibit a person from insuring himself against misconduct of a character serious enough to warrant punitive damages.

*Wojciak*, 310 N.W.2d at 680. Although the Court in *Wojciak* held that a treble damage award for a wrongful discharge claim was an exception to this rule, the general policy was clearly set forth.

The next Minnesota case discussing punitive damages awards was *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209 (Minn.1984) (*Perl I*). Although the Court in a footnote indicated that the precise issue of whether punitive damages were insurable was not before it, it did hold that an insurance policy provision which purported to cover a forfeiture of attorney fees based on a breach of fiduciary duty was not valid. *Id.* at 216.[1] In coming to this decision, the Court again reiterated that in most instances, Minnesota policy prohibited insurance against punitive damages.

This line of cases shows that although the Minnesota Supreme Court has never specifically held that punitive damages are uninsurable, there is clear public policy in this state against their insurability. This policy is that *"in most instances* public policy should prohibit a person from insuring himself against misconduct of a character serious enough to warrant punitive damages."* *Perl I*, 345 N.W.2d at 216; *Wojciak*, 310 N.W.2d at 680 (emphasis added). The court therefore finds that as a general rule, insurance coverage for punitive damages is void as against Minnesota public policy.

■ The court additionally finds that nothing about the facts of this case qualify it as an exception to the general rule. The fact that Goodyear is a large non-Minnesota corporation which could possibly be subjected to multiple punitive damage awards in products liability actions does not render it an exception. That a company has many products in a state only strengthens the Minnesota policy to make that manufacturer responsible for those products: the more products that exist, the more chance there

---

1. The Court's later holding in *St. Paul Fire & Marine Ins. Co. v. Perl*, 415 N.W.2d 663 (Minn. 1987) (*Perl II*), did nothing to change this policy. The Court in *Perl II* expressly noted that its determination on the subrogation issue in no way conflicted with this earlier decision in *Perl I*. 415 N.W.2d at 666 n. 2.

is for an injury occurring from one of those products.

The fact that Goodyear is a non-Minnesota corporation doing business in all 50 states also is not exceptionable. Although Goodyear may have different expectations when it does business in other states, when it does business in Minnesota, it must expect the same treatment as would be given a Minnesota corporation. If a Minnesota entity is not allowed to insure itself against punitive damages, it would be unfair to allow a foreign corporation to do so merely because it did not expect Minnesota law to govern its affairs. Additionally, Minnesota's policy is not designed to control only Minnesota corporations, the policy is designed to punish and deter conduct which is willfully indifferent to the safety of others. *See Hodder,* 426 N.W.2d at 837. That punishment and deterrence must apply to whomever does business in this state, not just those who reside here.

Because Minnesota law would not consider this case exceptional, Goodyear could not insure against its conduct in this situation. There is therefore a conflict between the laws of Georgia and the law of Minnesota. In such instances, Minnesota courts turn to Leflar's "choice influencing considerations" to determine which state's law applies. *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973). The choice of law considerations include: 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum state's governmental interest; and 5) application of the better rule of law. *Milkovich,* 203 N.W.2d at 412.

### B. *Choice Influencing Considerations*
#### 1. Predictability of Results

▮ The plaintiff insurance companies claim that in a situation such as this, the predictability factor deserves little consideration. Their argument is that this action involves mixed issues of tort and contract law. In such cases, Minnesota courts have stated that the unplanned nature of such accidents make predictability less important than in normal contract cases. *See,* e.g., *Hague v. Allstate Ins. Co.,* 289 N.W.2d 43, 48 (Minn.1979), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d 829, 833 (Minn.1979).

Goodyear disagrees with plaintiffs' assessment and argues that the predictability factor weighs heavily in favor of application of Georgia law. It argues that this suit is a contract dispute and that in contract cases predictability is of paramount importance, especially for a corporation which transacts business in all fifty states. It further argues that the question of whether a policy negotiated and entered into in Georgia covers certain damages should not be determined by the chance of where an accident occurred. Goodyear claims this holds particularly true for a corporation which has paid millions of dollars in premiums for protection from exactly such verdicts. If a court were to allow a state's law to void that contract, the predictability which is critical to the financial stability of a company would be frustrated. In support of its position, Goodyear cites two cases: *Standal v. Armstrong Cork Co.,* 356 N.W.2d 380 (Minn.Ct.App.1984), and *American Casualty Co. v. Bank of Montana System,* 675 F.Supp. 538 (D.Minn.1987). In *Standal,* the court held that predictability favored determining questions of a corporation's successor liability using the law of one state, even though claims against the company could arise throughout the country. In *American Casualty,* Judge MacLaughlin dealt with a directors and officers commercial liability insurance policy issued to a Montana corporation in Montana. Judge MacLaughlin stated that, "[i]t would be highly inefficient and unfair to expect the insured to have to relitigate the scope and terms of the policy based solely on the forum in which litigation over a Montana transaction occurred." *Id.* at 545.

Goodyear also argues that there is a strong policy favoring the validity of contracts, and it would be anomalous to say that a contract provision legal where made is void where it is to be enforced. Goodyear feels another factor favoring its posi-

tion is that two of the insurance policies at issue contain forum selection clauses.[2] It argues that the policies of Evanston and First State contain forum selection and choice of law clauses which must be honored. *See, e.g., Medtronic, Inc. v. Gibbons,* 527 F.Supp. 1085 (D.Minn.1981), *aff'd,* 684 F.2d 565 (8th Cir.1982).

Goodyear finally argues that this case should be distinguished from *Hague* and *Hime* because those cases are automobile accident cases. Defendant argues that in such cases the overriding policy is coverage of injured persons, and the Minnesota courts employ result-oriented analysis to reach a result which favors insurance coverage in all cases. It urges that such cases are a class unto themselves and should not be used as precedent in other types of cases.

The court finds that the predictability of result factor deserves little weight in this case. It is not, as Goodyear urges, strictly a contract case. The present action is based on an insurance contract, but without the underlying tort which occurred in Minnesota there would be no dispute. In this sense, products liability insurance is very much like an automobile insurance policy. Goodyear manufactures its products for distribution and use in all 50 states. It is foreseeable that an accident involving one of these products could arise in any state. What the Minnesota Supreme Court stated in *Hime* applies equally to insurance for products liability actions: the insurance protection has no geographical boundaries "and it is foreseeable that the insured may meet his misfortune out of the state of issuance" of a policy. *Hime,* 284 N.W.2d at 833.

■ No doubt, in such a situation, Goodyear desires predictability in its insurance coverage. In this case, however, contrary to Goodyear's assertions, it has not obtained this certainty through inclusions of choice of law language in the policies. The

language in the Evanston and First State policies merely gives the insurer's consent to be sued in any jurisdiction in which Goodyear brings an action. It does not, as in *Standal,* specify which law is to apply. *See Standal,* 356 N.W.2d at 382. The facts are also not as in *American Casualty,* where the parties incorporated Montana law into the terms of a contract. 675 F.Supp. at 545. The policies at issue here did not specifically designate the law to be used in interpreting this policy. As such, the language cannot be considered to be a choice of law provision which would weigh in Goodyear's favor. The predictability factor therefore does not weigh heavily either way in this case.

### 2. Maintenance of Interstate Order

This factor "requires that the state whose laws are ultimately applied have sufficient contacts with the facts in issue." *Hague v. Allstate,* 289 N.W.2d at 48. The Supreme Court interpreted this to mean that there must be an aggregation of contacts sufficient to satisfy the requirements of due process. *Hague,* 449 U.S. at 313, 101 S.Ct. at 640. Either state in this case has sufficient contacts with the present litigation to support jurisdiction. Plaintiffs and defendant both do business in Georgia. The policies were also negotiated, signed, and paid for in Georgia. Minnesota also has sufficient contacts to support jurisdiction. Goodyear conducts business in Minnesota, the accident giving rise to the litigation occurred in Minnesota, and the injury was to a Minnesota resident. Additionally, the underlying suit was tried in Minnesota and was the subject of a comprehensive opinion by the Supreme Court of this state. In this setting, the application of neither law would be arbitrary or fundamentally unfair.

### 3. Simplification of the Judicial Task

Plaintiffs argue that this factor is irrelevant because this court can apply Minnesota law to this case as easily as Georgia law.

---

2. Goodyear has premised most of its arguments on the policy issued by United States Fire. That policy is the lead or primary policy and the coverage terms of that policy apply to the others. The policies of Evanston, First State, and

Old Republic are basically excess umbrella policies which provide coverage when the $5 million limit of the United States Fire policy is reached.

*Milkovich v. Saari,* 203 N.W.2d at 412. Goodyear argues that this is not the case. It claims that the Minnesota courts have not clearly held that punitive damage insurance would be unavailable in cases such as this. This lack of clarity suggests that the proper forum for determination of the issue is the Minnesota Supreme Court, not a federal court sitting in the state.[3] This court has already determined that this case involves a conflict of law in that Minnesota law would not allow coverage for punitive damages. With that determination made, Goodyear's argument loses much of its force. This court can therefore as easily apply the law of Minnesota as of Georgia and this factor becomes irrelevant.

### 4. Advancement of the Forum's Governmental Interest

Goodyear claims that the forum's governmental interest in this case is small. It identifies the state interest as the compensation of Minnesota residents who are victims of torts. Mr. Hodder has already been paid, fulfilling that interest, and the present dispute concerns only which party will bear the burden of that payment. Goodyear also states that this fourth factor must also take into account the governmental interest of the non-forum state. It is asserted that Georgia's interest here is in binding insurance companies to the terms of a contract entered into in that state.

Although Goodyear's points are not without merit, the court finds that this factor weighs heavily in favor of using Minnesota law. Minnesota has a strong interest in deterring conduct which would lead to the injury of its citizens. Minnesota law expressly provides for punitive damages in a situation where a defendant's acts show willful indifference to the safety of others. *Minn.Stat.* § 549.20 (1986). The purposes of these damages are "to punish and deter the conduct found to be willfully indifferent to the safety of others." *Hodder,* 426 N.W.2d at 837. The Minnesota Supreme Court's repeated admonition that in most

cases punitive damages are uninsurable is directly tied to these purposes.

Mr. Justice Simonett referred to these purposes in *Hodder,* and stated that punitive damages have a public aspect which sets them apart from normal compensatory damages. *Id.* As such, the Supreme Court exercises close control over these awards. The jury in *Hodder* had assessed $12.5 million in punitive damages. The Supreme Court carefully reviewed the trial record and the reasons Goodyear was assessed punitive damages and reduced the award to $4 million. This tailoring of the jury's award sought to more closely correspond Goodyear's conduct to the purposes of the punitive damage statute. *Id.*

To fulfill Minnesota's interest a person or corporation must be responsive to the purposes of punitive damages. If conduct can be insured against which gives rise to punitive damages, the twin purposes of deterrence and punishment are, to a large extent, defeated. The careful tailoring of an award as in *Hodder* would become an empty gesture, as the actual punishment to be incurred by a defendant would not be the amount of the punitive award, but the amount of increase in its insurance premiums. It is for this reason that punitive damage insurance is not allowed in Minnesota, and for this reason Minnesota law will apply to this case.

### 5. Better Law

The final factor is to be applied only when the first four factors leave the choice of law question uncertain. *Myers v. Government Employees Ins. Co.,* 302 Minn. 359, 225 N.W.2d 238, 244 (1974). Minnesota's governmental interest in this case weighs more heavily in the choice of law equation than the first three factors. This choice of law is therefore certain and this court is not required to find that either approach to this issue is better. Regardless of which approach is better in an ultimate sense, Minnesota law will apply in this case.

---

**3.** This argument is somewhat curious, since this case was initially filed in Minnesota state court and Goodyear had it removed to federal court.

## III. VICARIOUS LIABILITY EXCEPTION

█ Goodyear's fallback position is that if Minnesota law prohibits insurance against punitive damages, there is an exception to this rule when the damages are imposed based on vicarious liability. *See Perl I,* 345 N.W.2d at 216. Goodyear argues that the burden is on the insurance companies to prove that the actions warranting the punitive damages in this case were actions of Goodyear, not Motor Wheel. If the insurers cannot meet that burden of proof, then coverage exists. *See Commercial Union Ins. Co. v. Ramada Hotel Operating Co.,* 852 F.2d 298 (7th Cir.1988).

Counsel for both parties cited various portions of the record and the Supreme Court opinion to prove it was either Goodyear's or Motor Wheel's conduct which led to the imposition of punitive damages in the *Hodder* case. As is expressed below, this is not an appropriate case for use of the vicarious liability exception, therefore it is unnecessary to determine whose conduct underlay the award.

As Goodyear has pointed out, the language in these insurance policies varies from the typical policy. Most policies impose a duty on an insurer to provide the insured with a defense. Under the policies at issue here, however, Goodyear provided its own defense. Goodyear controlled the litigation and the insurance companies were not represented through the state trial or appeal process. In due course at the state court trial, Goodyear's attorneys met with plaintiff's counsel and the trial judge to discuss the charge to the jury and the special verdict form to be sent to the jury. At that meeting, it was suggested that the jury be sent interrogatories specifying which defendants were to be assessed punitive damages.[4] Counsel for Goodyear at that time urged that there should be only one question relating to punitive damages.[5] Goodyear's suggestion was adopted and the punitive damage issue was submitted to the jury as follows:

13. Is Dale Hodder entitled to an award of punitive damages from Goodyear?
   ANSWER: Yes___ No___

14. If your answer to question 13 was "yes," then answer this question: Amount of punitive damages: ___

Goodyear's Petition for Writ of Certiorari to the Supreme Court of Minnesota, Appendix D, p. 38a.

Under these circumstances, the burden of proof cannot be placed on the insurance companies to prove it was Goodyear's, not Motor Wheel's, conduct which led to the punitive damage award. The trial court treated Goodyear and Motor Wheel as one entity, the Minnesota Supreme Court treated them as one entity, and Goodyear specifically requested that the court not use an interrogatory which would have determined whether Goodyear or Motor Wheel had occasioned the punitive damage award. The vicarious liability exception cannot apply in such a situation, especially because the interests of the insurers were not represented at the stage necessary to protect their interests.

## IV. CONCLUSION

Based on the discussion to this point, the decision in this case is readily discernible. Minnesota public policy prohibits insurance for punitive damages. No exceptions render this policy inapplicable to the present case.

Accordingly, based on the foregoing, the arguments of counsel, and the entire file as presently constituted,

IT IS HEREBY ORDERED AND DECLARED That:

1. Plaintiffs' motion for summary judgment is GRANTED;

2. Goodyear's motion for partial summary judgment is DENIED; and

---

**4.** The question suggested was of the format "[I]s plaintiff entitled to an award of punitive damages from Goodyear Tire and Rubber Company, yes, no. Amount. And then the same thing for Motor Wheel." *Hodder v. Goodyear Tire & Rubber Co.,* Transcript at 13,633.

**5.** *Id.*

3. Policy of Insurance No. 523–067213 issued by The United States Fire Insurance Company, Policy of Insurance No. EX 10737 issued by Evanston Insurance Company, Policy of Insurance No. 929794 issued by First State Insurance Company, and Policy of Insurance No. OZX 11672 issued by Old Republic Insurance Company to Goodyear Tire and Rubber Company provide no coverage for Goodyear's liability to Dale Hodder for punitive damages and interest thereon.