The UNITED STATES FIRE INSURANCE COMPANY, Evanston Insurance Company, First State Insurance Company, and Old Republic Insurance Company, Appellees,

v.

The GOODYEAR TIRE & RUBBER COMPANY, Appellant.

No. 90–5022.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1990.

Decided Nov. 30, 1990.

Rehearing Denied Jan. 7, 1991.

Daniel P. O'Keefe, Minneapolis, Minn., for appellant.

Scott W. Johnson, Minneapolis, Minn., for appellees.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Goodyear Tire & Rubber Company appeals from the holding of the District

Court[1] that punitive damages are not covered by the insurance policies issued by the appellees. We affirm.

## I.

In 1980, Goodyear obtained liability insurance from United States Fire Insurance Company, Evanston Insurance Company, First State Insurance Company, and Old Republic Insurance Company (hereinafter "the insurers").[2] This insurance included coverage of product liability claims. In 1981, Dale Hodder, a resident of Minnesota, was seriously injured in an accident involving a tire rim manufactured by Goodyear. In the lawsuit that followed,[3] Hodder was awarded compensatory damages of over $3.3 million and punitive damages of $12.5 million by a Minnesota jury. On appeal, the Minnesota Supreme Court upheld the compensatory damages award, but reduced the punitive damages award to $4 million.

During the course of the appeals process, in 1986, United States Fire notified Goodyear of the insurers' position that punitive damages are not insurable in Minnesota. After the Hodder case became final in June 1989, Goodyear requested that the insurers reimburse Goodyear for the punitive damages award. Negotiations among the parties, which had begun earlier on other unresolved disputes, continued until the insurers filed a declaratory judgment action in Minnesota state court on July 13, 1989. The subject of the action was the insurability of punitive damages under the policies taken out by Goodyear. Goodyear removed the action to the District Court and also filed suit in federal court in Georgia,[4] seeking a resolution of the punitive damages issue and other coverage disputes.[5]

Claiming that Georgia was the appropriate forum, Goodyear moved the District Court to stay or dismiss the declaratory judgment action. The District Court denied the motion. Goodyear then filed a counterclaim, raising the issues contained in its Georgia action, and the insurers moved for summary judgment on their claim that punitive damages were not covered by the policies. The court granted this motion. In deference to the Georgia action, the court dismissed Goodyear's counterclaim regarding other coverage disputes without prejudice.

On appeal, Goodyear raises four issues: 1) the District Court abused its discretion in not staying or dismissing the declaratory judgment action in deference to the Georgia action; 2) the District Court erred in ruling that punitive damages are not insurable under Minnesota law; 3) the court erred in applying Minnesota substantive law instead of Georgia law to the coverage question concerning the insurability of punitive damages; and 4) the court erred in ruling that the vicarious liability exception to the rule prohibiting insurance coverage for punitive damages does not apply.

## II.

■ The first question raised by Goodyear is whether the insurers' declaratory judgment action, which was the first suit filed, should proceed in the face of the second-filed action brought by Goodyear. The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce,*

---

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota. Judge Alsop's opinion is published as *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 726 F.Supp. 740 (D.Minn.1989).

2. United States Fire was the primary insurer, while the other three companies provided excess coverage.

3. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826 (Minn.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

4. No. 1:–89–CV–1782–HTW (N.D.Ga. (pending)).

5. The insurance policies were negotiated and issued in Georgia.

*Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply. *Orthmann,* 765 F.2d at 121. The District Court found no such compelling circumstances. We hold that the District Court did not abuse its discretion in applying the first-filed rule. *E.E. O.C. v. University of Pa.,* 850 F.2d 969, 972 (3rd Cir.1988), *aff'd on other grounds,* —— U.S. ——, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990).[6]

While it might be true that Goodyear could be considered the "true plaintiff" in this dispute, and that the insurers' motive in filing this action in Minnesota was to avoid the application of Georgia law, Goodyear did have almost three years notice of the insurers' position on the issue of insurance coverage for punitive damages under Minnesota law. Further, while Goodyear claims that it was misled by the insurers' agreements to negotiate differences in policy interpretations, the record indicates that the correspondence concerning possible negotiations dealt exclusively with another disputed coverage issue, the "allocated expense" issue. It is not an abuse of discretion to find these circumstances less than "compelling."[7]

Goodyear's reliance on two cases, *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir.1983) and *E.E.O.C. v. University of Pa., supra,* is misplaced. Most importantly, these two cases *affirmed* a district court's discretionary decision concerning an exception to the first-filed rule, while Goodyear is asking for a *reversal* of the court's discretionary action. In *Mission Insurance* the insurer gave the insured an extension of the time within which the insured could sue and stated that it would give the insured a written statement of its position on the coverage issue.

*Mission Ins.,* 706 F.2d at 600. Instead, after telling the insured that the insured could postpone filing suit until after receiving the written statement, the insurer filed a declaratory judgment action without ever providing the written statement. *Mission Ins.,* 706 F.2d at 600. There is no record of such misleading, egregious actions taken by the insurers in this case.

In *E.E.O.C.,* the EEOC issued a subpoena to the University of Pennsylvania, but gave the University a grace period, during which time the EEOC would not seek to enforce the subpoena. *E.E.O.C.,* 850 F.2d at 972–73. Three days before the grace period was to expire, the University filed suit in the District Court for the District of Columbia, challenging the validity of the subpoena. *E.E.O.C.,* 850 F.2d at 973. The EEOC then sought to enforce the subpoena in the Eastern District of Pennsylvania, where the subpoena had been issued. *E.E. O.C.,* 850 F.2d at 973. The District Court in Pennsylvania held that the second-filed suit (the subpoena enforcement) should proceed, rather than defer to the first-filed suit in the D.C. court. *E.E.O.C.,* 850 F.2d at 973–74. Such a fact pattern does not exist in the case at hand. Here, the second-filed suit is not an enforcement of an already-issued subpoena, but is a completely separate suit filed in a different court. It is not a continuance of a legal process already underway.

We hold that the District Court did not abuse its discretion by proceeding with the first-filed Minnesota action.

### III.

#### A.

■ Goodyear argues that the District Court erred in holding that punitive dam-

---

**6.** Our standard of review on this issue is "abuse of discretion." It is true that with respect to the discretionary decision whether or not to exercise jurisdiction over a declaratory judgment action, "we may substitute our judgment for the lower court's." *Century Indem. Co. v. McGillacuty's, Inc.,* 820 F.2d 269, 270 (8th Cir.1987). But the issue presented here does not concern the District Court's exercise of jurisdiction over a declaratory judgment action; instead, it concerns the District Court's decision whether to stay or dismiss a first-filed action in deference to a second-filed federal action pending in an-

other court. That decision required the District Court to exercise its discretion and is reviewed for an abuse of discretion. *Kerotest Mfg. Co. v. C-O-TWO Fire Equip. Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952).

**7.** If anything is compelling, it is that this dispute is the result of a Minnesota-imposed judgment about an accident that occurred in Minnesota. This factor weighs in favor of the District Court's decision not to enter a stay in deference to the Georgia action.

ages are not insurable under Minnesota law. This question must be addressed before we can proceed to the choice of law issue, because we must determine whether a conflict exists between Georgia and Minnesota law.

It is undisputed that punitive damages are insurable in Georgia. *Greenwood Cemetery, Inc. v. Travelers Indem. Co.*, 238 Ga. 313, 232 S.E.2d 910, 913–14 (1977). The District Court found that Minnesota does not normally allow such coverage. "(A)s a general rule, insurance coverage for punitive damages is void as against Minnesota public policy." *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 726 F.Supp. 740, 742 (D.Minn.1989). Reviewing this determination under a deferential standard, we affirm the District Court's ruling. *Anderson v. Employers Ins. of Wausau*, 826 F.2d 777, 779 (8th Cir.1987) ("(f)ederal appellate courts give special weight to a district court's interpretation of state law"); *Tiffany Indus., Inc. v. Commercial Grain Bin Co.*, 714 F.2d 799, 802 (8th Cir.1983) ("we give great weight to the district court's construction of state law in diversity cases").

In *Caspersen v. Webber*, 298 Minn. 93, 213 N.W.2d 327 (1973), the Minnesota Supreme Court narrowly construed an insurance policy that provided for payment of "all sums ... [owed] as damages because of bodily injury," *Caspersen*, 213 N.W.2d at 329, to exclude coverage for punitive damages awards, because the punitive damages were awarded as punishment and not because of bodily injury. *Caspersen*, 213 N.W.2d at 331. In a subsequent case, the Minnesota Supreme Court stated that "in most instances public policy should prohibit a person from insuring himself against misconduct of a character serious enough to warrant punitive damages." *Wojciak v. Northern Package Corp.*, 310 N.W.2d 675, 680 (Minn.1981). And in *Perl v. St. Paul Fire & Marine Insurance Co.*, 345 N.W.2d 209 (Minn.1984), the Minnesota Supreme Court quoted from the above passage in *Wojciak*, *Perl*, 345 N.W.2d at 216,

even though it noted that "(t)he precise issue of whether punitive damages are insurable is not before us." *Perl*, 345 N.W.2d at 215 (n.7). Finally, in *State Fund Mutual Insurance Co. v. Enebo*, 458 N.W.2d 161 (Minn.Ct.App.1990) (not cited by the District Court or the parties because it was not issued until July 17, 1990), the Minnesota Court of Appeals stated that "(o)rdinarily, a person may not insure against intentional acts of misconduct serious enough to warrant punitive damages." *Enebo*, 458 N.W.2d at 163. The court went on to note the reason for this is that allowing such coverage "would frustrate the deterrent purpose of punitive damages." *Enebo*, 458 N.W.2d at 163.

In light of these cases, we cannot say that the District Court incorrectly interpreted Minnesota law as prohibiting insurance coverage for punitive damages.

### B.

■ There being a conflict between Georgia law and Minnesota law as found by the District Court, it has to be determined whether, under Minnesota choice-of-law rules, Georgia or Minnesota substantive law applies to the question of the insurability of punitive damages. Goodyear asserts that the District Court erred in not applying the substantive law of Georgia.

In making its decision, the District Court used the choice-of-law standard approved by the Minnesota Supreme Court in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973), to wit, Professor Leflar's "choice-influencing considerations,"[8] to hold that Minnesota substantive law applies. *United States Fire Ins. Co.*, 726 F.Supp. at 743–45. Again, we review this determination under a deferential standard. *Anderson*, 826 F.2d at 779; *Tiffany Indus.*, 714 F.2d at 802.

The "choice-influencing considerations" used by the District Court to decide which state law to apply are: 1) predictability of results; 2) maintenance of interstate order;

---

8. R. Leflar, L. McDougal & R. Felix, *American Conflicts of Law* § 95 (4th ed. 1986) (hereinafter "Leflar").

3) simplification of the judicial task; 4) advancement of the forum state's governmental interest; and 5) application of the better rule of law. *United States Fire Ins. Co.*, 726 F.Supp. at 743. The court analyzed these factors in detail, and concluded that advancement of the forum state's governmental interest "weighs heavily in favor of using Minnesota law," *United States Fire Ins. Co.*, 726 F.Supp. at 745, and was thus dispositive of the choice of law issue.

The District Court found that Minnesota has a strong interest in preventing injury to its citizens, and thus allows for punitive damages as punishment to wrongdoers. *United States Fire Ins. Co.*, 726 F.Supp. at 745. The District Court also found that Minnesota's general rule against the insurability of punitive damages is related to this interest, and noted that the state's interest in protecting its citizens and punishing wrongdoers could be furthered only if the responsible parties felt the effects of punitive damages awards. *United States Fire Ins. Co.*, 726 F.Supp. at 745. The court found that such effects would be greatly reduced if punitive damages were insurable, and found that it is important to Minnesota's governmental interest that Minnesota law be applied to the question of the insurability of a Minnesota-imposed punitive damages award. *United States Fire Ins. Co.*, 726 F.Supp. at 745. We find no fault in this analysis, and we agree with the District Court's determination that consideration of the advancement of the forum state's governmental interest weighs heavily in favor of applying Minnesota law to this case.

The District Court found the other Leflar factors largely irrelevant. The predictability of results factor was found to carry little weight, as the underlying event was an unplanned occurrence. *United States Fire Ins. Co.*, 726 F.Supp. at 744. *See also Hague v. Allstate Ins. Co.*, 289 N.W.2d 43,

48 (Minn.1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).[9] The maintenance of interstate order factor was found to be unimportant, because both Georgia and Minnesota were found to have sufficient contacts with the case. *United States Fire Ins. Co.*, 726 F.Supp. at 744. *See also Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). Simplification of the judicial task was likewise found to be not a relevant factor, because the law from both states was easily applied and finally, the District Court declined to reach the better law factor, as it is used only as a "tiebreaker" factor. *United States Fire Ins. Co.*, 726 F.Supp. at 745. *See also Myers v. Government Employees Ins. Co.*, 302 Minn. 359, 225 N.W.2d 238, 244 (1974). We cannot say that the District Court erred in its analysis of these choice-influencing considerations.

Giving substantial deference to the District Court's interpretation of Minnesota's choice-of-law rules, we affirm its decision to apply the substantive law of Minnesota in this case.

## IV.

■ Finally, Goodyear argues that even if Minnesota law applies and usually does not allow for the insurability of punitive damages, the District Court erred in holding that the vicarious liability exception to this rule does not apply in this case.

Before proceeding to analyze this issue, some background information from the underlying products liability case[10] needs to be examined. The tire rim that exploded was manufactured and sold by Goodyear through its wholly-owned subsidiary, Motor Wheel Corporation. It was distributed by Pioneer Rim & Wheel Company. The safety brochures and ad campaigns for Motor Wheel were developed by Aviso, Inc., an ad agency. Hodder originally sued everyone

9. Goodyear argues that this is solely a contract case, and as such, the predictability of results factor should be of great importance. Although we agree that this factor is an important one, we believe that here it is outweighed by Minnesota's strong interest in applying its rule concerning the insurability of punitive damages. The triggering event that gave rise to this litigation was

the judgment of the Minnesota state court holding Goodyear liable for not only actual but also punitive damages for injuries caused to the plaintiff in the state tort action (Hodder), a Minnesota resident, by a Goodyear tire rim.

10. *See* n. 3, *supra.*

but Aviso, but the trial court dismissed Pioneer from the case.

At trial, the jury was asked to decide whether the rim's design was defective. The jury decided the design was not defective. They were next asked to decide whether Goodyear was negligent based on its knowledge of the danger of the rim and its failure to accompany the rim with adequate warnings. The jury found Goodyear to be negligent. The same question was asked about Motor Wheel, with the same answer. The jury also found that Remer Oil Company (Hodder's employer) was negligent. The jury apportioned fault as follows: Goodyear 42.5%, Motor Wheel 42.5%, and Remer 15%.

The jury was then asked if Hodder was entitled to punitive damages from Goodyear, and they decided that he was. The amount awarded was $12.5 million. The jury was not asked about punitive damages from Motor Wheel as Goodyear's lawyer (representing both Goodyear and Motor Wheel) objected to a separate question on punitive damages from Motor Wheel, because "the net worth of Goodyear ... includes Motor Wheel," Appellant's Appendix, vol. I, at A–273 (transcript of the trial between Hodder and Goodyear Tire & Rubber Co.) (hereinafter "Appellant's Appendix"), and because, as the trial judge said, "Goodyear and Motor Wheel [are] one and the same" (a statement to which Goodyear's lawyer did not object). Appellant's Appendix at A–274. In its brief to this Court, Goodyear states that the reason it only wanted one question on punitive damages was that it "didn't want to give the jury two opportunities to impose punitive damages, and thereby possibly increase the amount awarded." Appellant's Brief at 36 (n.11).

On appeal, the Minnesota Supreme Court ruled that the punitive damages award was proper but that the amount was excessive. *Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 835 (Minn.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). The court ruled that punitive damages against Goodyear could be awarded only for its failure to warn, and held that the $12.5 million award was improperly based on the cost of a recall. *Hodder,* 426 N.W.2d at 836–37. Awarding punitive damages only for Goodyear's inadequate warnings, the Minnesota Supreme Court reduced the punitive damages award to $4 million. *Hodder,* 426 N.W.2d at 837.

Goodyear now asserts that it is a separate entity from Motor Wheel (and that they stand in the relationship of master and agent), and that the duty to distribute adequate warnings (with the award of punitive damages based on the failure to perform such duty) was Motor Wheel's, Pioneer's, and Aviso's. Because Aviso was not a party to Hodder's lawsuit, and the trial court dismissed Pioneer from that suit, we will concern ourselves only with Goodyear and Motor Wheel.

Assuming for purposes of this case, as did the District Court, that Minnesota does recognize a vicarious liability exception to the general rule prohibiting insurance coverage for punitive damages,[11] we must determine whether the exception should apply to Goodyear in this case. The District Court ruled that it should not, and we agree.[12]

---

11. This premise is somewhat in doubt. In *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d 209 (Minn.1984), the Minnesota Supreme Court ruled that partners in a law firm could be insured against forfeiture damages brought about by a partner's egregious professional misconduct. The court stated that it was "interesting to note that some courts which prohibit insurance coverage for punitive damages as a matter of public policy make an exception and allow insurance coverage for an employer who is only vicariously liable for the wrongdoing of a servant or agent." *Perl,* 345 N.W.2d at 216. However, the court did not say that such an exception was available in Minnesota, and the court also noted explicitly that the case involved forfeiture damages, not punitive damages, which the court said were different in kind. *Perl,* 345 N.W.2d at 214.

12. Our review of this ruling is *de novo. Commercial Union Ins. v. Ramada Hotel Operating Co.,* 852 F.2d 298, 300 (7th Cir.1988). "We ... must focus upon the inferences that can permissibly be drawn from the punitive damages verdict of the state court jury in light of the instructions it was given." *Commercial Union Ins.,* 852 F.2d at 302.

Goodyear claims that the sole reason for imposing punitive damages was a failure to distribute adequate warnings. If so, then the action penalized was at least as much Goodyear's as Motor Wheel's, because the jury found both to be equally negligent in failing to provide adequate warnings. Further, the jury was asked separate questions about Goodyear, Motor Wheel, and Remer regarding negligence. It is unlikely that when then asked about only Goodyear regarding punitive damages, the jury then would "aggregate" the separate parties under the banner of Goodyear to award such damages.

Further, the jury instructions stated that a master could be held punitively liable only if the agent was unfit and the master recklessly hired him, or if the master authorized the doing and the manner of the agent's "bad act." Thus, even if the "bad act" (failure to warn) was Motor Wheel's doing, the jury could award punitive damages against Goodyear only on the basis of Goodyear's tortious acts (reckless supervision or authorization). With these instructions, liability could not have been imposed vicariously, because the jury was not allowed to penalize Goodyear solely on the basis of its agent's wrongdoing. Instead, a finding of wrongdoing by Goodyear was required before Goodyear could be held liable for punitive damages.

Moreover, even if there were anything in the record before us to indicate that Goodyear is an innocent party being punished for the "sins" of its agent, it is disingenuous for Goodyear now to claim that it and Motor Wheel should be treated as separate entities, not "one and the same." The trial court stated that the two are "one and the same," with no objection from Goodyear's lawyer. Appellant's Appendix at A–274. Goodyear also asked for just the one jury instruction on punitive damages, to avoid giving the plaintiff two bites at the same apple. If Goodyear and Motor Wheel are really "two separate apples," as Goodyear now claims, then there would have been no concern about the jury getting two opportunities to increase the punitive damages award.

Finally, the insurers claim (and are not refuted by Goodyear) that, regarding the compensatory damages and legal fees awarded in the *Hodder* case, Goodyear combined its portion of the damages and fees with Motor Wheel's portion when presenting its claim to the insurers. Appellee's Brief at 47 (n.26). We therefore agree with the insurers that it would be inequitable now to treat the two companies as separate entities in a master-servant relationship for purposes of applying Minnesota's putative vicarious liability exception to the noninsurability-of-punitive-damages rule. If Goodyear and its wholly-owned subsidiary are one entity for purposes of obtaining coverage of compensatory damages and fee awards, then they must be considered as one entity for purposes of applying the vicarious liability exception.

In these circumstances, we agree with the District Court that the vicarious liability exception is not available to Goodyear.

### V.

For the foregoing reasons, we affirm the District Court's declaratory judgment that the insurance policies issued by the appellees to Goodyear do not cover the punitive damages awarded against Goodyear in the *Hodder* case.

